Gregory YANCEY, et al.,
Plaintiffs–Appellants,

v.

CARROLL COUNTY, KY., et al.,
Defendants–Appellees.

No. 87–5898.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 2, 1989.

Decided April 10, 1989.

As Amended June 27, 1989.

Rehearing and Rehearing En Banc
Denied June 27, 1989.

J.B. Rees (argued), Florence, Ky., plaintiffs-appellants.

K. Gregory Haynes, Wyatt, Tarrant and Combs, Virginia Snell (argued), Louisville, Ky., for defendants-appellees.

Beverly R. Storm, Robinson, Arnzen, Parry & Wentz, Covington, Ky., for Laman Stark.

Mary Elizabeth O'Bryan, Louisville, Ky., for City of Carrollton.

J. Guthrie True (argued), William E. Johnson, Stoll, Keenon & Park, Frankfort, Ky., for defendants-appellees Harrison, Hamilton, Lusher, Davidson and Elliott.

Phillip Taliaferro, Christopher J. Mehling (argued), Rhonda Morris, Covington, Ky., for defendant-appellee Simpson.

Before ENGEL, Chief Judge, and KRUPANSKY and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.

Appellants Greg Yancey, Kenneth Ashcraft, and Ron Cardwell appeal the district court's grant of summary judgment for defendants in this 42 U.S.C. § 1983 action. For the reasons that follow, we affirm in part and remand in part.

## I

This case involves the "mistaken" arrest and/or search of appellants in the course of investigating a grisly murder in Carroll County, Kentucky. Carroll County, Carrollton, and Kentucky State Police (KSP) personnel were jointly involved in the investigation. The pertinent facts are as follows.

Ruby L. Bickers and Roy Bickers were found murdered at their home on the morning of March 29, 1985. The bodies were found by Carrollton Police Chief Laman Stark, Carrollton Police Officer Ronnie Culver, and KSP Trooper Milton Aldridge. The deaths had been caused by hacking or slashing the victims with a sharp instrument that "widened quickly" at the base. The murder weapon was characterized on a report as a hatchet, but the officer who wrote the report stated that this only meant that the murder weapon was not a knife. Mrs. Bickers's fingers had been slashed and according to doctor's reports, the fingers were slashed while Mrs. Bickers was trying to defend herself. Rings were found on her fingers. Robbery was believed to be the motive for the murders, and there was initially a particular concern that rings and other jewelry might have been taken.

Following the discovery of the bodies, officers from the Kentucky State Police, the Carrollton Police Department, the Carroll County Sheriff's Department, and the Carroll County Coroner would gather each morning at the Carrollton Police Department to discuss the status of the investigation. The officers would determine what investigative work was needed and would divide up these tasks. These sessions were held beginning on March 30 and extending through April 9, 1985.

On April 5, 1985, Detective Harrison received an anonymous telephone call at the KSP Post at Dry Ridge, Kentucky from someone who claimed to have heard a confession to the Bickerses' murders. Detective Harrison made arrangements to have the anonymous caller come to the State Police Headquarters the next day. The anonymous caller was Faye Smith, appellant Yancey's aunt. Smith told the police that Yancey confessed to the murders of Roy and Ruby Bickers to her and her son while they were driving near Williamstown, Kentucky. Smith stated that Yancey had told her that he had stopped by the Bickerses' home on the evening of the murder, had a cup of coffee with the couple, and then left. Smith stated that Yancey had then told her that he forced his way back into the Bickerses' home, attacked them with a machete, hacked off Mrs. Bickers's fingers in order to get her rings, and watched as they bled to death. Smith also informed the police that Yancey told her that the murder weapon, a machete, was at the trailer of his friends, Ashcraft and Cardwell.

Based upon Smith's account, Yancey became a suspect in the Bickerses' murder. Investigators went back to the murder scene and looked for evidence which might tend to disprove or corroborate Smith's account. Police determined that the door had been forced open. There was a swath of carpet which was under Mrs. Bickers's hand that appeared to have cut marks on it. Police also found a coffee cup in the kitchen sink. After analysis, police determined that the only fingerprints on that coffee cup were from Mrs. Bickers, and that the cut in the carpet swath was made long before the murders.

On April 9, the police also contacted Ms. Smith in order to determine whether a pair of Mrs. Bickers's earrings matched any of the rings allegedly shown her by Yancey. After examining the earrings, Smith told the police that she believed that the earrings matched a ring shown her by Yancey. At this time, the police did not attempt to interview Smith's son about his account of the incident.

On the morning of April 10, 1985, Judge Billingsley of the Carroll County District Court was presented with a request from Detective Hamilton to issue an arrest warrant for Greg Yancey for the murders of Ruby and Roy Bickers. He was also asked to issue a search warrant for the Ashcraft/Cardwell trailer in Williamstown, Kentucky. The requests were supported

with affidavits signed by Commonwealth's Attorney Ackman. These affidavits summarized the information known to the investigators at that time concerning the informant's tip, but did not include information about the nature of Mrs. Bickers's finger wounds or information regarding the lack of corroborative fingerprint evidence placing Yancey at the murder scene.

Though only one informant had spoken to the police at this time, Judge Billingsley recalled in his deposition that he may have been told that two witnesses had heard Yancey's "confession" and given statements to the police. When asked if he would have granted the warrant if he had only been told of one informant, he responded, "you know, if you have two informants, it's better than having one, but this was quite sufficient on its own."

On April 10, 1985, Judge Hall of the Boone County District Court was asked by Detective Harrison to issue a search warrant for the home of Greg Yancey. In his deposition, Judge Hall stated that at the time of the request, he questioned the adequacy of the affidavit, and Harrison then told him that Officer Carl Parker had seen Greg Yancey carrying what might have been weapons into his apartment. This recollection was substantiated by a change in the affidavit made by order of Judge Hall saying that Yancey had been seen with weapons at a Boone County address on April 9. According to his deposition, Judge Hall was not absolutely sure he would have issued the warrant without this statement. Specifically, Judge Hall stated:

> "Again, all I can say about the weapons, I do recall the conversation because it was a very dramatic type of statement the officer was telling that Officer Parker had seen, and certainly I felt good about issuing the warrant when they left and based on that.
>
> But again, going back to whether I would have signed the warrant without knowing that particular bit of information, I don't think so. I believe that the—and to be honest, I believe in reading it now, that it was sufficient to issue a search warrant on."

Detective Harrison later stated in his deposition that there had been some confusion and that in fact he had been told by Officer Simpson that Officer Parker had seen Yancey carrying a machete into his apartment on April 6.

On April 10, 1985, Yancey was arrested in his home for the murders of Ruby and Roy Bickers. His home and the Ashcraft/Cardwell trailer were searched. The search did not turn up any new evidence. Hair and blood samples were taken from Yancey, but did not match those samples found at the scene of the crime. On April 12, 1985, the file was closed to public view by an order from Judge Billingsley. During this time, appellant alleges that there was much speculation about his guilt. On April 15, 1985, the day that the grand jury was to meet, the officers agreed that the charges against Yancey should be dropped. There may have been some discussion at this time that only Commonwealth's Attorney Ackman would talk to the press about the case. Lt. Davidson, and Detectives Harrison and Hamilton were present at this meeting.

On the afternoon of April 15, Ackman announced to the press that Yancey would be released for "lack of evidence". He also stated that the police had jumped the gun but that Yancey was still a strong suspect. Another suspect, Fitzgerald, was later apprehended and convicted for the Bickerses' murder.

On August 13, 1985, Yancey filed his original complaint in the United States District Court for the Eastern District of Kentucky alleging a 42 U.S.C. § 1983 violation against the Kentucky State Police, detectives Ronald Harrison, James Hamilton, and other state officers. Yancey amended his complaint on January 10, 1986, to add KSP officers Gary Lusher, Lieutenant Dan Davidson, Lt. Robert Elliott, and other subordinate officers. On April 9, 1986, Ashcraft and Cardwell filed their complaint against Harrison, Hamilton, and Elliott. On September 2, 1986, the Ashcraft/Cardwell action was consolidated with the Yancey case. Yancey sought damages against defendants Harrison, Hamilton, Lusher,

Davidson, Elliott, and other defendants pursuant to 42 U.S.C. § 1983 and § 1985, and for conspiring to impede and hinder the due course of justice by a denial of the equal protection of the laws, due process violations, unreasonable search and seizure, and deprivation of rights, privileges, and immunities, as guaranteed by the fourth, eighth, and fourteenth amendments to the U.S. Constitution, and Sections 1, 2, 3, 10, 11, 13, 16, and 17 of the Constitution of the Commonwealth of Kentucky. Yancey also seeks damages for alleged violations of his common law rights. Specifically, Yancey alleged that he was subject to unlawful arrest, false imprisonment, unreasonable search and seizure, defamation, trespass, conversion, battery, and both negligent and intentional outrageous conduct resulting in emotional distress.

Ashcraft and Cardwell sought damages against defendants Harrison, Hamilton, Elliott, and other state police officers pursuant to 42 U.S.C. §§ 1983 and 1985 for the alleged unreasonable search of their residence and for refusing or neglecting to prevent any deprivation of their rights, privileges and immunities as guaranteed by the fourth and fourteenth amendments to the U.S. Constitution and Section 10 of the Kentucky Constitution. Ashcraft and Cardwell also seek damages for the alleged violation of their common law right to be free from trespass.

On January 13, 1987, the district court heard oral argument on defendants' motion to dismiss. On January 15, 1987, the court granted motions dismissing defendants Bob Noble, Ken Woods, G.G. Perry, Wayne Heightchew, Philip Marshall, and David Judy. Defendants James Dunn, Carroll County, Kentucky, and the city of Carrollton were later dismissed based on official immunity. On January 15, the court also granted partial summary judgment to defendant Ackman on the 42 U.S.C. § 1983 claims.

On March 9, 1987, the court granted summary judgment in favor of Simpson, Harrison, Hamilton, Lusher, Davidson, and Elliott based on its holding that there was no genuine issue of material fact concerning whether there was probable cause to arrest and search Yancey. On July 1, 1987, the court granted summary judgment to the last remaining defendant, Commonwealth's Attorney Ackman, on the issue of common law slander and defamation.

Yancey, Ashcraft, and Cardwell filed the instant appeal on July 31, 1987, challenging the district court's summary judgment dismissal of the City of Carrollton, Carroll County, Carroll County Coroner James Dunn, Sheriff Cayton, Police Chief Stark, and Kentucky State Police Officers Harrison, Hamilton, Lusher, Davidson, Elliott, and Simpson. The dismissal of Ackman was not appealed.

II

When reviewing the district court's grant of summary judgment, this court must determine if there is any genuine issue of material fact such that a jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

The district court dismissed appellees Carroll County, the City of Carrollton, Coroner Dunn, Sheriff Cayton, and Police Chief Stark from this case on the basis of general supervisory immunity, finding that any possible violation of constitutional rights could not be imputed to these defendants. Appellants claim that the issue should have gone to a jury.

■ A court may dismiss a 42 U.S.C. § 1983 action against government officials on summary judgment if the undisputed facts show that "defendants' conduct, as a matter of law, did not violate clearly established constitutional rights." *Poe v. Haydon,* 853 F.2d 418 (6th Cir.1988). *See also Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Dominque v. Telb,* 831 F.2d 673 (6th Cir. 1987). To show this violation, the conduct of the public officials must rise beyond the level of mere negligence. *Nishiyama v. Dickson County, Tenn.,* 814 F.2d 277, 281 (6th Cir.1987) (en banc). With reference to a governmental entity, the appellant can

show a violation of § 1983 only if the entity's supervisory personnel cause constitutional deprivations pursuant to a governmental custom or policy. *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978).

In the present case, appellants seek to hold the City of Carrollton, Carroll County, and various supervisory personnel thereof, responsible for a deprivation of constitutional rights based upon their conduct of the investigation against Yancey and the failure to train their officers properly.

■ Appellants have failed, however, to allege any facts which would give rise to a finding of liability of these defendants under present law. Those officers who acted in the investigation were pursuing promising leads about a major crime. Appellants have been unable to show that Coroner Dunn, Sheriff Cayton, and Chief Stark were acting in any way that was inconsistent with their jobs, let alone in any way which violated a clearly established constitutional right.

■ Similarly appellants have not been able to show that these defendants' actions, taken according to the requirements of their jobs, raised any genuine issue as to liability of the municipal defendants in the present case. Although appellants have an expert who has testified that the training of the officers pursuant to Carroll County and Carrollton directives was negligent, negligence does not constitute a 42 U.S.C. § 1983 violation under *Monell*.

Therefore, the lower court's dismissal of these defendants should be upheld.

### III

Appellants further contend that the dismissal of appellees Simpson, Hamilton, Harrison, Lusher, Elliott, and Davidson on the basis of immunity was improper on summary judgment. Appellants claim that these defendants violated their constitutional rights by undertaking an unreasonable search and seizure, and that there are genuine issues of material fact to be determined regarding this claim. Therefore, the question becomes whether there was probable cause for the appellees' actions regarding the search and seizure. If there is probable cause, defendants are absolutely immune from suit, and the action was properly dismissed on summary judgment. *Easton v. City of Boulder, Co.,* 776 F.2d 1441, 1448 (10th Cir.1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986).

In general, a determination of whether there was probable cause for a search which gave rise to a § 1983 action is a question to be determined by a jury unless there is only one reasonable determination. *Llaguno v. Mingey,* 763 F.2d 1560, 1565 (7th Cir.1985); *McKenzie v. Lamb,* 738 F.2d 1005, 1008 (9th Cir.1984); *Losch v. Borough of Parkesburg,* 736 F.2d 903, 909 (3rd Cir.1984); *B.C.R. Transport Co., Inc. v. Fontaine,* 727 F.2d 7, 10 (1st Cir.1984); *Nix v. Sweeney,* 573 F.2d 998, 1001 (8th Cir.1978). In determining whether defendant's § 1983 action should have been dismissed on summary judgment, a court is to "evaluate for some minimal showing of credibility any evidence that the defendants did not have probable cause." *Losch,* 736 F.2d at 909.

The district court placed great reliance upon the officers' use of a judicially secured warrant for their arrest and searches, finding that since a warrant was secured, these officers had probable cause for their search and seizure.

■ Police officers are entitled to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable. *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986). Thus, an officer cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant. *See Donta v. Hooper,* 774 F.2d 716, 718–19 (6th Cir. 1985); *U.S. v. Mankani,* 738 F.2d 538, 545 (2nd Cir.1984) (citing *Franks v. Delaware,*

438 U.S. 154, 165, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667 (1978)).

In the present case, the appellants claim that the district court should not have dismissed appellees Harrison and Hamilton on summary judgment because the appellants allege that Harrison and Hamilton knowingly made false statements to Judges Billingsley and Hall when they secured the warrants against appellants.

■ In the case of Judge Billingsley, appellants note that he was not told about Yancey's fingerprints not being found on the coffee cup, and that Judge Billingsley may have been told by Hamilton that the police had two sworn statements claiming that Yancey had confessed to the Bickerses' murder and not just one.

However, Judge Billingsley testified in his deposition that even though he might have been told that there were two sworn statements that Yancey had confessed, the one sworn statement "would have been sufficient on its own." Likewise, there was deposition testimony by the detectives involved that the fact that Yancey's fingerprints were not present in the home or on the coffee cup would not disprove the informant's story. Therefore, the district court was correct that there were no genuine issues of material fact, because Judge Billingsley would have issued the warrant whether or not there had been a false statement. Thus, Hamilton was correctly dismissed on summary judgment.

■ Detective Harrison's case is not so easily dismissed. Detective Harrison went before Judge Hall in Boone County in order to secure a warrant to search appellant Yancey's apartment. In his deposition, Judge Hall recalls that Detective Harrison told him that Officer Parker had told Harrison that he saw Yancey carrying what might have been weapons into his apartment on April 9. Harrison's statement apparently came after Judge Hall expressed some doubt that probable cause existed for the search. Detective Harrison stated in his deposition that he told Judge Hall that Officer Simpson told him that he [Simpson] was told by Parker that he had seen Yancey with a machete on April 6. Although

the discrepancy in dates and reporting may not seem important at first blush, the significance of what was allegedly said by Detective Harrison and what was allegedly heard by Judge Hall is attested by the importance Judge Hall placed upon it in his deposition. Therefore, this is an important question of fact. Whether this is material or not depends on the extent to which Judge Hall relied on these statements in issuing the search warrant. In the court below, the district court relied on an affidavit by Judge Hall which stated that he "might" or "probably" would have issued the warrant without the disputed statement, though he did rely on the statement in signing the warrant. Therefore, the district court determined that Judge Hall would have issued the warrant anyway and there was no issue of material fact for the jury regarding Harrison's presentation of material showing probable cause.

However, in Judge Hall's deposition he states "whether I would have signed the warrant without knowing that particular bit of information, I don't think so." The ambiguity in this statement and in Judge Hall's entire deposition is obvious. The district court apparently assumed that Judge Hall's deposition should be construed as implying that Judge Hall "does not think" that he would *not* have signed the warrant. However, the grammatical structure implies just the opposite. Certainly the rest of Judge Hall's testimony does not clarify the ultimate question of whether he would have issued the warrant. Therefore, after an analysis of Judge Hall's affidavit and his initial doubts about the warrant expressed to Detective Harrison, we hold that a reasonable person could believe that Judge Hall would not have issued the warrant but for the disputed statement. Therefore, the issue of whether there was a lack of probable cause for the search of Yancey's home should have been submitted to a jury. We therefore remand to the district court for a jury trial on this issue.

### IV

■ The district court's dismissal of appellees Simpson, Lusher, Elliott, and David-

son, however, should be upheld. Although Lusher, Elliott, and Davidson were involved in the decisions to seek warrants, and Simpson participated in the search, the evidence of Yancey's culpability was at least strong enough that the officers were under a duty to present it to a judge to determine if there were probable cause. Furthermore, appellants have presented absolutely no evidence that Simpson, Lusher, Elliott or Davidson were involved in providing any false information in the affidavits used to secure the warrants. Therefore, the district court was correct in holding that as a matter of law, these defendants' conduct had not violated "clearly established constitutional rights." Investigation, without more, simply does not rise to the level of a constitutional violation cognizable under 42 U.S.C. § 1983.

V

 Finally, appellant Yancey claims that the district court incorrectly dismissed his conspiracy claim on summary judgment. This contention is without merit. A district court may dismiss a conspiracy charge in a 42 U.S.C. § 1983 action on summary judgment if the uncontested facts establish that no conspiracy existed. *Adickes v. S.H. Kress and Company*, 398 U.S. 144, 153, 90 S.Ct. 1598, 1606, 26 L.Ed. 2d 142 (1970).

Appellant alleged that there was a meeting of officers in which it was decided that only one of them would talk to the press, thus creating a "cover-up" conspiracy. Appellant has pointed to no evidence that there was any conspiratorial motive involved in designating Ackman as the press spokesman. Allegations alone will not defeat a motion for summary judgment, *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986), and therefore the district court correctly dismissed this claim on summary judgment.

 This case is AFFIRMED in part and REMANDED in part for disposition consistent with this opinion.[1]

1. We decline to assess sanctions against appellants as requested by appellees the City of Carrollton, Carroll County, Sheriff Cayton, and Coroner Dunn. Although appellants' theory of municipal liability may not be convincing to this court, it is not so far-fetched as to represent a "truly egregious case of misconduct" warranting the imposition of attorney's fees. *See Jones v. Continental Corporation*, 789 F.2d 1225, 1232 (6th Cir.1986).