948 F.2d 1290
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ronald RICHARDSON, Plaintiff-Appellant,
v.
CITY OF DAYTON, et al., Defendants-Appellees.
 No. 91-3219.
 United States Court of Appeals, Sixth Circuit.
 Nov. 21, 1991.
 
 Before BOYCE F. MARTIN, Jr. and NATHANIEL R. JONES, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Ronald Richardson appeals from the district court's grant of summary judgment in a civil rights action brought under 42 U.S.C. § 1983 against defendants Michael Spencer, David Putnam, Bruce May, and Mark Sears. Richardson asserts that there are factual issues regarding the basis of his arrest and the automobile search that make summary judgment inappropriate. He also contends that the evidence viewed in a light most favorable to him demonstrates that the defendants arrested him for a misdemeanor offense, which is generally unlawful in Ohio. Finally, he asserts that the defendants used this unlawful arrest as a pretext to conduct an unlawful automobile search. For the following reasons, we affirm in part and reverse in part.
 
 
 2
 On the evening of February 3, 1988, seven Dayton police officers, including the defendants, were patrolling areas of high drug activity. In the Blueberry Apartments, one of the areas of high drug activity, the officers arrested two individuals for possession of "crack" cocaine and cocaine powder. The two suspects, subsequently identified as Bernard Jackson and Joseph Richardson, informed the officers that two black men in a grey Jeep Cherokee with Michigan license plates would return in approximately one hour to make a drug delivery. Richardson indicated that he had been a passenger in the Jeep and stated that the Jeep contained cocaine and weapons. The suspects also stated that the two individuals in the Jeep were producing "crack" cocaine in a north Dayton motel. Officer Spencer received corroborating information from Anthony Smith and Danny Palmer. Palmer was a resident of the area and was known by Spencer.
 
 
 3
 Based on this information, the officers established surveillance of the area. Officers Spencer and Sears spotted a grey Jeep Cherokee approximately 45 minutes later. The Jeep's headlights were not illuminated. Officers Marcus Spencer and Michael Siekierka, who were observing the vehicle from a vacant apartment, informed the other officers that the Jeep bore Michigan license plates. Spencer and Sears stopped the Jeep and approached the vehicle with their guns drawn. The officers noticed that the passenger, subsequently identified as Ronald Richardson, was not wearing his seat belt. The officers ordered the men out of the vehicle and patted them down; the officers found no drugs or weapons on the two men.
 
 
 4
 Richardson and the officers dispute what happened next. The officers allege that Richardson refused to identify himself to the police officers. The officers placed the two men in the police cruiser and issued them citations for the seat belt and headlight violations. The officers then contend that the two men were laughing about the incident and that Richardson's companion remarked that the officers would never see them again. The officers allege that they took this remark to mean that the two men did not intend to comply with the citations. Richardson disputes the officers' version of the events. He contends that neither he nor his companion refused to identify himself to the officers. Furthermore, he contends that nothing was said to give the officers any indication that the men did not intend to comply with the citations.
 
 
 5
 The remaining facts are essentially undisputed. The officers arrested Richardson and his companion for the seat belt and headlight violations and then transported them to the police station. During this time, Officers May and Putnam, without a search warrant, conducted an "inventory" search of the Jeep and found two loaded .25-caliber automatic weapons. Sears and Spencer received the information regarding the weapons by radio and charged Richardson and his companion with carrying concealed weapons. A search of Richardson produced a key to a local motel room. A local judge issued a search warrant for the motel room, and inside the room the police discovered cocaine and "crack."
 
 
 6
 On March 29, 1988, a Montgomery County, Ohio, grand jury indicted Richardson for carrying a concealed weapon and for possession of cocaine. A Montgomery County court, however, ruled that (1) the police had illegally arrested Richardson for a misdemeanor, (2) the search of the Jeep was a direct search and not an inventory search, and (3) the court would suppress all evidence obtained from the search of the Jeep. The state subsequently dismissed both the weapon and cocaine charges.
 
 
 7
 On February 3, 1989, Richardson filed this suit against the officers under 42 U.S.C. § 1983 alleging a violation of his Fourth, Sixth, and Fourteenth Amendment rights as a result of the arrest and automobile search. Richardson also asserted the pendent state law claims of false arrest, false imprisonment, malicious prosecution, and respondent superior. The parties filed cross motions for summary judgment. The court denied Richardson's motion for partial summary judgment, but granted the defendants' motion holding that the officers had not violated Richardson's constitutional rights. The court acknowledged that the officers had admitted they arrested Richardson and his companion for the headlight and seat belt violations, which the officers knew were misdemeanors. The court, however, stated that the only reasonable conclusion it could draw was that the officers actually arrested the men based upon probable cause that the two men were involved in drug trafficking. The court also stated that there was probable cause to search the vehicle.
 
 
 8
 In reviewing a motion for summary judgment, a district court must consider the evidence in a light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). A summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988) (quoting Fed.R.Civ.P. 56(c)). If the district court determines that the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574 (1986). We review a district court's grant of summary judgment de novo. Klepper v. First American Bank, 916 F.2d 337, 341 (6th Cir.1990).
 
 
 9
 Upon the record before us, the district court properly granted summary judgment to the officers on the issue of the automobile search. The facts in this case are very similar to those in Rakas v. Illinois, 439 U.S. 128 (1978). In Rakas, the police searched the interior of a vehicle and discovered a box of rifle shells in the glove compartment and a sawed-off rifle under the front passenger seat. Id. at 130. The Supreme Court rejected the defendants' Fourth Amendment claim of unlawful search and seizure. The Court reasoned that because the defendants had asserted neither a property or possessory interest in the automobile, nor an interest in the property seized, they had not established a legitimate expectation of privacy from governmental intrusion. Id. at 148-49. Similarly, in the present case Richardson has failed to establish a legitimate expectation of privacy in the Jeep in which he was riding as a passenger. Therefore, as a matter of law, the officers' search of the Jeep did not violate Richardson's Fourth Amendment rights.
 
 
 10
 The district court, however, erred in granting summary judgment to the officers on the issue of Richardson's arrest. Under the doctrine articulated by the Supreme Court in Terry v. Ohio, 392 U.S. 1, 27 (1968), when the officers spotted Richardson and his companion in the grey Jeep with Michigan license plates, the officers possessed reasonable suspicion to stop and question the two men. When the officers arrested Richardson and his companion, the officers exceeded the limits of a Terry stop and became subject to potential section 1983 liability for an unconstitutional seizure. A claim under section 1983 for an unconstitutional seizure exists when the seizure takes place in the absence of probable cause. Thus, this case hinges upon whether, at the moment of Richardson's arrest, the police officers possessed probable cause to arrest Richardson. A jury should resolve this issue unless there is only one reasonable conclusion that can be drawn. See Yancey v. Carroll County, Ky., 876 F.2d 1238 (6th Cir.1989). In this case, since the parties dispute the facts necessary to resolve the issue of probable cause, and more than one reasonable conclusion can be drawn from the facts, summary judgment is inappropriate.
 
 
 11
 We are aware that, even if proven, any period of unconstitutional arrest would be small. The period runs from the moment the police officers arrested Richardson until the moment the officers discovered the weapons in the Jeep. As a matter of law, the discovery of the weapons gave the police probable cause to arrest Richardson. Regardless of the shortness of the time period, the district court on remand should allow Richardson to pursue his claim for an unconstitutional arrest.
 
 
 12
 The police officers also assert that they are entitled to qualified immunity. Government officials performing discretionary functions are afforded a qualified immunity shielding them from civil liability as long as their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware. Poe v. Haydon, 853 F.2d 418, 423 (6th Cir.1988) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)), cert. denied, 488 U.S. 1007 (1989). "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time [the action] was taken." Anderson v. Creighton, 483 U.S. 635, 639 (1987) (citations omitted). In other words, the contours of the clearly established right must be sufficiently clear such that a reasonable officer would understand that his actions violate that right. Id. at 640.
 
 
 13
 Because of factual disputes in this case, it is inappropriate for us to rule as a matter of law that qualified immunity shields the officers from liability. The applicability of qualified immunity to a given set of facts is a question of law for a court to decide. Garvie v. Jackson, 845 F.2d 647, 649 (6th Cir.1988). In this case, however, a jury should be the final arbiter of the qualified immunity issue since the resolution of the qualified immunity issue turns upon which view of the facts the jury accepts. See Brandenburg v. Cureton, 882 F.2d 211, 215-16 (1989) (factual issues precluded the court from holding that qualified immunity barred new trial).
 
 
 14
 For the foregoing reasons, the judgment of the district court is affirmed in part and reversed in part.