**Johnie R. RUBY, Nina Darlene Ruby, Plaintiffs–Appellees,**

v.

**Charles HORNER, Todd Bryant, City of Portsmouth, Defendants–Appellants.**

**No. 01–4003.**

United States Court of Appeals, Sixth Circuit.

June 26, 2002.

Before GUY and BATCHELDER, Circuit Judges; WALTER, District Judge.*

PER CURIAM.

Defendants–Appellants Charles Horner, Todd Bryant, and the City of Portsmouth appeal from summary judgment denying them qualified and quasi-judicial immunity resulting from the search of the business owned by Plaintiffs–Appellees Mr. and Mrs. Ruby. Horner and Bryant also appeal the denial of state law statutory immunity. Horner and Bryant argue that they had probable cause to search Mr. and Mrs. Ruby's restaurant, The Lakeside Barbeque Pit and Steak House. The Rubys contend that the district court correctly found that the Appellants did not have probable cause to search their restaurant and were not entitled to qualified immunity. We AFFIRM as to both findings and DISMISS the remaining issues on appeal for lack of subject matter jurisdiction.

I.

This Court only has jurisdiction to hear an appeal from a "final decision" of the district court. 28 U.S.C. § 1291. "[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law" qualifies as a final decision under § 1291. *Williams v. Mehra,* 186 F.3d 685, 689 (6th Cir.1999) (en banc) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). Municipalities are not entitled to qualified immunity. *Owen v. City of Independence,* 445 U.S. 622, 657, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Barber v. City of Salem,* 953 F.2d 232, 237 (6th Cir.1992).

This Court does not have jurisdiction to hear appeals of the denial of quasi-judicial or statutory immunity because neither is a final decision. The City of Portsmouth is not entitled to qualified immunity because it is a municipality. The issues before the Court are whether Horner and Bryant had probable cause to search the restaurant and whether they are entitled to qualified immunity. All other issues are dismissed for lack of subject matter jurisdiction.

II.

Portsmouth, Ohio police officers arrested Mr. Ruby's brother, Robert Ruby (Robert), on November 6, 1998, for possession of 19.5 grams of cocaine. Robert declined to consent to a search of his residence, which was in the same building as Mr. and Mrs. Ruby's barbeque restaurant and shared the same municipal address. Officer Bryant obtained the search warrant. In the affidavit in support of the warrant, Bryant listed twenty-one occasions between 1990 and 1998 when law enforcement officials were apprised of Robert's illegal drug activity. Nearly two-thirds of these tips came from anonymous callers and the drug hotline. Other information came from confidential informants and law enforcement officers. Four tips received in 1992, 1995, and 1998 stated that Robert either owned or operated the barbeque restaurant and that he sold drugs from the rear of the restaurant. Bryant stated in the affidavit that it was his experience that drug dealers like Robert tend to keep drug paraphernalia such as scales and baggies

---

* The Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

in their *residences*. He believed that Robert had such items in his *residence*.

The Portsmouth Municipal Court issued a search warrant on November 6, 1998, which authorized the search of:

> A gray one story wood frame structure commonly known as 6269 State Route 125 West Portsmouth, Scioto County, Ohio. The *residence* is attached to a business commonly known as The Lakeside Barbecue Pit and Steak House. The business has what appears to be an apartment located on the right side. (emphasis added.)

Although the restaurant and the apartment shared the same municipal address, each had its own separate entrance and there was no access between the two. Horner and Bryant searched both Robert's residence and Mr. and Mrs. Ruby's restaurant. They found marijuana and cocaine hidden in Robert's residence, but nothing illegal in the restaurant. Robert was later convicted of drug possession.

Before conducting the search of the building on November 6, 1998, the officers contacted the alarm company for the restaurant and advised it not to notify Mr. and Mrs. Ruby of the officers' entry and search of their business. During the search the officers pried the couple's locked safe from the floor, broke it open, and destroyed property. Mr. and Mrs. Ruby claim that they were not provided with a copy of the search warrant nor an inventory of the items seized from their business despite their requests.[1] The officers seized cash, the safe, a checkbook, and documents from the business. These items were returned to them only after they retained counsel.

### III.

■ Mr. and Mrs. Ruby contend that the officers violated their Fourth Amendment rights against unreasonable searches and seizures when they searched the restaurant. They argue that the officers did not have probable cause to carry out the search. Even if a search warrant is defective, government officials are protected from liability for civil damages by qualified immunity as long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). An appeal of a district court's denial of qualified immunity may only be reviewed by this Court if the appeal raises questions of law. *Williams*, 186 F.3d at 689–90 (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir.1996)). The issue in this case is whether the facts alleged show that the officers violated the clearly established law, of which a reasonable person would have known, against unreasonable searches and seizures.

It is clearly established that people are protected by the Fourth Amendment and that a search warrant must be based on probable cause. Probable cause exists if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Weak factual information in an affidavit for a warrant may still provide probable cause if the police officers investigate and confirm informants' claims. *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir.1996). One warrant may be used to search multiple "places or residences in a single building[,]" if all are

---

1. The officers stated on the impounded property routing form that they left a copy of the warrant in the residence.

being used as a single unit. *United States v. Olt*, 492 F.2d 910, 911 (6th Cir.1974) (citations omitted). However, if there is no information that the entire structure is being used as a single unit, there must be probable cause to search each unit. *Id.*

There was no evidence that the entire structure at 6269 State Route 125 West Portsmouth, Ohio was used as one unit. None of the alleged facts in this case show that the two units were being used for a common purpose. Robert's apartment served a residential purpose and The Lakeside Barbeque Pit and Steak House served a business purpose. The lack of access between the two units and the lack of a common entrance preclude a finding that the two units were used for a common purpose. Pursuant to *Olt*, probable cause was required to search each unit.

There is also no evidence that Robert had any connection with the restaurant, other than being a relative of the owners. Of the four tips listed in the affidavit regarding Robert's alleged connection to the restaurant, one was six-and-a-half years old and two were over three years old. The oldest tip stated that Robert had "recently" bought the restaurant. The other two tips stated that Robert owned/ran the restaurant.[2] These four tips may arguably have been enough had the officers investigated and confirmed that Robert actually owned or ran the restaurant. However, the officers did not confirm any of these anonymous tips. Moreover, the officers' instruction to the alarm company not to notify Mr. and Mrs. Ruby of the search, rather than Robert, indicates their knowledge that Robert did not own or operate the restaurant. There was not enough information in the affidavit for the officers to reasonably believe that they could search Mr. and Mrs. Ruby's restaurant.

Further, there is no mention in the affidavit that the officers were interested in searching the restaurant. On the last page of the affidavit, Bryant stated that the arresting officers asked Robert if they could search his *residence* at The Lakeside Barbeque Pit. The officers were interested in locating drug paraphernalia that Robert had hidden in his residence. Taken together, the affidavit and the warrant appear to reference the restaurant merely as a way to identify where Robert's apartment was located. The officers interpreted the warrant too broadly in searching the restaurant.

## V.

For all of the foregoing reasons, the district court was correct in finding that the officers are not entitled to qualified immunity. Therefore, we AFFIRM the decision of the district court.

RALPH B. GUY, Jr., Circuit Judge, dissenting.

I respectfully dissent. I believe the issue of absolute immunity is ripe for disposition. The denial of quasi-judicial absolute immunity is immediately appealable. *Barrett v. Harrington*, 130 F.3d 246, 252 (6th Cir.1997). But judicial immunity does not cover obtaining and executing a search warrant. Judicial immunity is available for a police officer's testimonial acts but not his nontestimonial acts. *Spurlock v. Satterfield*, 167 F.3d 995, 1001–03 (6th Cir. 1999). Obtaining and executing a search warrant is nontestimonial. Qualified immunity is sufficient to protect an officer performing investigative work. *See Mal-*

---

**2.** The newest of the four tips, approximately six months old, stated that Robert was seen selling drugs from the rear of the restaurant.

*ley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

Second, I would grant qualified immunity to the police officers. The search of the restaurant was not supported by probable cause because it was based on unsubstantiated anonymous tips. But that does not end the inquiry. Police officers are entitled to qualified immunity if the constitutional rights they are alleged to have violated were not "clearly established." *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley,* 475 U.S. at 341, 106 S.Ct. 1092.

The police in this case did not rely on *one* anonymous tip.[1] They received tips over several years. Three tips, including one in 1998, stated that Robert Ruby was selling drugs from the restaurant. The police knew that Robert's residence and the restaurant were in the same building. Regardless of who owned the building and whether there was a connecting door, Robert Ruby could have had ready access to the restaurant to sell drugs as described in the anonymous tips.[2] Most significantly, the police did not seek a warrant based solely on the anonymous tips. The police sought a warrant only after Robert Ruby was arrested with a significant amount of cocaine. A police officer could have reasonably believed that Robert's arrest with

possession of cocaine corroborated the multiple anonymous tips. *See United States v. King,* 227 F.3d 732, 742 (6th Cir.2000) (police knowledge of person's involvement as supplier of cocaine corroborated information from informant).

The police contacted the restaurant's security company before executing the search. This shows that they believed that the warrant covered the entire building. The warrant identified the place to be searched as the gray one-story frame structure, and then described the restaurant and apartment in the building. The supporting affidavit not only described how Robert refused to consent to the search of his "residence," it also described the anonymous tips that alleged he was selling drugs from the restaurant.

I would find on this record that the police officers reasonably believed that the warrant was supported by probable cause and covered both the restaurant and the apartment. This is not a case of plain incompetence or knowing violation of the law.

.

---

1. *See United States v. Martinez,* 1997 WL 26461 (6th Cir. Jan.22, 1997) (unpublished disposition) (distinguishing *United States v. Leake,* 998 F.2d 1359, 1365 (6th Cir.1993) (with only one informant) from an affidavit noting six separate informants with corroborating stories).

2. Johnie Ruby stated in his affidavit that the police allegedly asked the security company not to notify plaintiffs of the impending search. These hearsay statements do not show that the officers knew who owned the

restaurant before they contacted the alarm company. Thus, if the officers learned that Robert did not own the restaurant after the warrant was issued, they could still reasonably believe there was probable cause to search the restaurant, particularly since they would have learned that a person with the same name (who turned out to be the brother of Robert Ruby) owned the restaurant. *See Yancey v. Carroll County,* 876 F.2d 1238, 1243 (6th Cir.1989).