NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0324n.06

Case No. 23-2100

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>

ELEANORE KUE, et al.,

    Plaintiffs-Appellants,

v.

SAMUEL NORTH, et al.,

    Defendants-Appellees.

</td><td>

)
)
)
)
)
)
)
)
)
)

</td><td>

**FILED**
Jul 25, 2024
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

O P I N I O N

</td></tr>
</table>

Before: GRIFFIN, NALBANDIAN, and BLOOMEKATZ, Circuit Judges.

**NALBANDIAN, Circuit Judge.** After a months-long investigation into His Healing Hands, a medical clinic in Lansing, for over-prescribing controlled substances, Michigan prosecutors declined to press charges. The clinic's owners and operators, Dr. Eleanore Kue and her husband Simon, were not happy about this investigation. So they sued, alleging among other things violations of their Fourth and Fourteenth Amendment rights and malicious prosecution. But because their complaint fails to plausibly allege a constitutional violation, the district court dismissed the case on the pleadings. Finding no error, we AFFIRM.

**I.**

**A.**

Dr. Eleanore Kue ran an urgent-care clinic called His Healing Hands in Lansing, Michigan (the "Clinic"). In 2019, Michigan State Police in the Diversion Investigation Unit (DIU) started investigating whether Kue was overprescribing controlled prescription medications to Clinic

patients. Officer Brett Brice, a member of the DIU, stated in his search warrant affidavit[1] that he noticed "several red flags of overprescribing or prescribing outside the scope of legitimate medical practice." R.34-2, Clinic Search Warrant, p.6, PageID 244. This was based in part on a tip from a local pharmacist and on information about Kue's prescribing history gathered from Michigan's Automated Prescription System (MAPS). MAPS showed that "the top three drugs prescribed by Dr. Eleanore Kue in order are Clonazepam (Klonopin) 1mg tablet, Alprazolam 1mg tablet, and Tramadol HCL 50mg tablet," three Schedule IV controlled substances. *Id.*; *see also* Drug Enforcement Administration, Controlled Substances - Alphabetical Order, 6, 8, 20 (last updated April 15, 2024), https://perma.cc/QRQ8-EYEX. Brice also spoke to a Blue Cross Blue Shield investigator who explained that Kue's ratio of payments for prescriptions versus payments for office visits was "unusual"—Blue Cross Blue Shield paid $133,000 for Kue's prescriptions but only $23,000 for her office visits. *See id.* at pp.6–7, PageID 244–45.

On top of this, Brice visited His Helping Hands four times as an undercover agent. He observed what he thought was suspicious behavior by both the patients and Dr. Kue herself. Officers Benjamin Garrison and Thomas Proffitt also visited the Clinic undercover.

In December 2019, a Michigan state court judge approved search warrants for Kue's home and the Clinic. Officers executed the warrants the next day. Officers additionally obtained warrants to freeze two bank accounts associated with Kue. Despite all this, the county prosecutor declined to press charges against Kue and dropped the civil forfeiture proceedings against Kue and

---

[1] At the Rule 12(c) stage, "a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

the Clinic. The Michigan Board of Medicine, however, investigated Kue and placed her on probation for one year and fined her $2,000 for medical negligence.

**B.**

Believing themselves wronged by this whole ordeal, Eleanore and Simon Kue sued under 42 U.S.C. § 1983 alleging various violations of their Fourth and Fourteenth Amendment rights.[2] They sued the Michigan State Police troopers and others,[3] asserting that Defendants (1) failed to support the search warrants with probable cause, (2) subjected them to malicious prosecution, (3) violated their substantive due process rights, (4) conspired to violate their civil rights, and (5) tortiously interfered with a business relationship.

Defendants moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). In response, Plaintiffs moved to amend under Rule 15(a), which permits amendments "when justice so requires." Fed. R. Civ. P. 15(a)(2). The district court denied Plaintiffs' motion, faulting them for failing to "file a substantive response to the Rule 12(c) Motion" and instead "seeking leave to file an Amended Complaint." R.58, Order, p.1, PageID 495. "It's time to get a direct and substantive response to Rule 12(c) Motion on the pleadings as they have stood" for several months, the court declared. *Id.* at p.2, PageID 496. "If [P]laintiffs' position is that they can't defend the existing pleading and can only survive if they are permitted to amend, then they should say that. On the other hand, if they think the pleading can be defended in its current form, they should say that and explain why." *Id.*

---

[2] His Healing Hands Urgent Care Center, Inc., is also a plaintiff.

[3] This includes Troopers Samuel North, Brett Brice, Benjamin Garrison, Scott Josephs, and Thomas Proffitt. Plaintiffs also sued Janice Waldmiller, Jamie Ousley, Debra Gagliardi, Forest Pasanski, Eric St. Onge, and Lindsey Malocu. But these parties were voluntarily dismissed. *See* Appellants Br. at 18 n.85; Appellees Br. at 4 n.3. So only the Michigan State Police troopers remain.

So Plaintiffs filed a response to the motion for judgment on the pleadings, arguing it should not be granted and, in the alternative, their motion should be construed as a Rule 56(c) motion—a motion for summary judgment—to allow the district court to consider their proposed amended complaint. The district court again denied Plaintiffs' motion: "The Court closely examined Plaintiffs' Proposed Amended Complaint" and "[n]one of these allegations sufficiently demonstrate that Defendants violated Plaintiffs' Fourth or Fourteenth Amendment rights." R.62, Op. and Order, pp.16–17, PageID 565–66.[4] In the same opinion and order, the district court granted Defendants' motion for judgment on the pleadings, finding that Plaintiffs failed to state plausible claims for relief on all counts, and the court declined to exercise supplemental jurisdiction over the state-law claim. Plaintiffs timely appealed.

## II.

Though they present various issues, Plaintiffs' claims come within two broad questions: (1) whether the district court erred in denying Plaintiffs' motion to amend, and (2) whether the court erred in granting Defendants' motion for judgment on the pleadings. The parties first ask us to evaluate the denial of the motion to amend, then to review the grant of judgment on the pleadings. But, as explained below, these two broad questions essentially merge into one.

### A.

To see how, consider the standard for reviewing a denial of a motion to amend. Though a "court's order denying a Rule 15(a) motion to amend is usually reviewed for an abuse of discretion," *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010),

---

[4] The district court said the "new material consist[ed] only of inconsequential nit-picks; more possible innocent explanations for Kue's behavior; and additional conclusory assertions that Defendants made falsified or misleading statements or omissions." R.62, pp.16–17, PageID 565–66.

"we review de novo a district court's denial of a motion to amend a complaint based on a finding that 'the amendment would be futile,'" *Bray v. Bon Secours Mercy Health, Inc.*, 97 F.4th 403, 409 (6th Cir. 2024) (quoting *Baaghil v. Miller*, 1 F.4th 427, 432 (6th Cir. 2021)). Applying that here, recall that the district court reviewed the proffered amendment and concluded that "[n]one of these allegations [contained in the proposed amended complaint] sufficiently demonstrate that Defendants violated Plaintiffs' Fourth or Fourteenth Amendment rights." R.62, p.17, PageID 566. The court rejected the proposed amended complaint because it changed nothing. In fewer words, it rejected it because it was futile. When the denial is based on futility, we will uphold the decision if "the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health*, 601 F.3d at 512.

This connects the first issue to the second: "When a district court dismisses a case under Federal Rule of Civil Procedure 12(c), we review de novo using the same standard as a dismissal under Rule 12(b)(6)." *Boyle v. Ford Motor Co.*, No. 23-1452, 2024 WL 1406401, at *2 (6th Cir. Apr. 2, 2024) (citing *Moderwell v. Cuyahoga County*, 997 F.3d 653, 659 (6th Cir. 2021)); *see also JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). So though our case deals with Rule 12(c), the standard is the same. It should be apparent by now that our inquiry into whether the amended complaint would be futile merges—indeed, entirely overlaps—with the Rule 12(c) question. If Plaintiffs can't make out a plausible claim, then the district court neither erred in denying their motion to amend the complaint nor, more importantly, in granting the motion for judgment on the pleadings.

So this case is entirely governed by the Rule 12(b)(6) standard. "To avoid dismissal under Rule 12(b)(6)"—and therefore 12(c)—"a plaintiff must allege facts that, when taken as true, 'state a claim to relief that is plausible on its face' and that rises 'above the speculative level.'" *Bray*, 97

F.4th at 410 (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). We "must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Ohio v. United States*, 849 F.3d 313, 318 (6th Cir. 2017) (citation omitted). "But we need not accept as true legal conclusions or unwarranted factual inferences." *JPMorgan Chase Bank*, 510 F.3d at 581–82 (internal quotation marks omitted).

**B.**

One more thing informs our legal analysis here—Defendants argue that they are protected by qualified immunity. This requires us to ask two questions in any order: "First, taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right? Second, is the right clearly established?" *Rhodes v. Michigan*, 10 F.4th 665, 672 (6th Cir. 2021) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

Because the court dismissed this case under a 12(c) motion, we ask "whether the complaint plausibly alleged a constitutional violation." *Myers v. City of Centerville*, 41 F.4th 746, 759 (6th Cir. 2022). So "if the complaint fails to allege facts plausibly showing the violation of a constitutional right (regardless of whether that right was clearly established), granting qualified immunity is appropriate on the pleadings," and the "assertion of qualified immunity, by itself, does not change that." *Id.* To be sure, we've suggested that determining whether the contours of a right are clearly established may be a little trickier on a motion to dismiss before factual development. *See Crawford v. Tilley*, 15 F.4th 752, 765 (6th Cir. 2021). But we are also cognizant that "the Supreme Court has consistently stated that one of the goals of qualified immunity is not only to

help defendants avoid unnecessary trials but also to allow defendants to avoid pre-trial discovery where the lawsuit is 'insubstantial.'" *Id.* at 763 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 808 (1982)).

With that background in mind, we can cut to the crux of this case—did Plaintiffs plausibly allege a constitutional violation for each count? The long and short of it is that they did not.

## III.

## A.

Plaintiffs primarily argue that Defendants violated their constitutional rights under the Fourth Amendment when they executed search warrants not supported by probable cause. With qualified immunity, "our precedent offers a complete defense against" the claim that a search or seizure lacked probable cause "when officers relied on a magistrate judge's warrant." *Novak v. City of Parma*, 33 F.4th 296, 305–06 (6th Cir. 2022) (internal quotation marks omitted). "But this defense has two exceptions." *Id.* at 306. "The first covers cases when an officer provides false information to obtain a warrant." *Id.* (citation omitted). The second "applies if 'the warrant is so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable.'" *Id.* (quoting *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989)); *see also Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). Defendants obtained warrants from a state court judge before searching the Clinic and the Kues' home.[5] So Plaintiffs must show one of the exceptions applies.

---

[5] As Plaintiffs note, the affidavit supporting the search warrant for the Clinic, R.34-2, and that supporting the search warrant for the Kue's home, R.34-3, are "[i]dentical," Appellants Br. at 11 n.54, so we use the search warrant for the Clinic as an example when we discuss the contents of both warrants.

First, the false-information exception. Plaintiffs must allege that "officers knowingly or recklessly made false statements or significant omissions" that were material or necessary to finding probable cause. *Novak,* 33 F.4th at 306. Plaintiffs' initial complaint failed to plausibly allege any false statements or omissions because it contained only conclusory accusations. *See, e.g.*, R.1, Compl., p.4, PageID 4 (alleging that "unlawful search warrants were issued," and "Defendants . . . executed the unlawful search warrants"). And even if we look at Plaintiffs' proposed amended complaint, we still don't see enough.

For example, Plaintiffs state, "Brice's statement that Xanax [a.k.a. Alprazolam], Klonopin[,] and Tramadol were the 'top drugs that Dr. Kue was prescribing' was false and inaccurate" because "non-controlled substance medications were the top drugs that she was prescribing." R.54-3, Proposed Am. Compl., p.16, PageID 456 (emphasis omitted). But if you look at Brice's statement in context, discussing data in MAPS—"an electronic system for monitoring schedule 2, 3, 4, and 5 *controlled substances*," Mich. Comp. Laws § 333.7333a (emphasis added)—it is not false or inaccurate because it is talking about controlled substances often prescribed by Kue, not all drugs. *See* R.34-2, p.6, PageID 244. Similarly, Plaintiffs fail to allege any omissions that would be material or necessary to the finding of probable cause. Though they assert many omissions in the search warrant affidavit, *see* R.54-3, pp.15–16, 20–22, 25, PageID 455–56, 460–62, 465, we find none convincing. Viewed in the context of the whole search warrant, these appear to be, as the district court called them, "inconsequential nit-picks." R.62, p.16, PageID 565. Plaintiffs, for instance, fault Brice for not including "specific numbers" about the tip from the pharmacist, omitting information about non-controlled substances prescribed by Kue, and not discussing whether undercover officers claimed they had anxiety during undercover visits. R.54-3, pp.14–16, 21, 25, PageID 454–56, 461, 465.

As to the specific numbers, Brice provided nearly a full page of details surrounding the tip he received from the pharmacist, including the names of multiple individuals who received prescriptions on a consistent basis and information from a Blue Cross Blue Shield investigator. *See* R.34-2, p.6, PageID 244. Similarly, the context of the controlled and non-controlled drugs shows that Brice did not omit this information; he simply limited his report to controlled substances. *See id.* And the disputed discussions of anxiety with Clinic staff were not material to the Clinic's prescription patterns. *See id.* at pp.7–9, PageID 245–47.

What's more, as the district court correctly noted, Plaintiffs' assertions "essentially collapse[] to an argument that Brice refused to list out potentially innocent explanations for Kue's prescribing history and behavior." R.62, p.10, PageID 559. "But probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts." *District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018). The "relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)). Indeed, probable cause "does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 582 (6th Cir. 2003) (quoting *Adams v. Williams*, 407 U.S. 143, 149 (1972)).

In all, the search warrant affidavit was lengthy and detailed, containing multiple examples of "red flags." R.62, p.9, PageID 558. Simply pointing out a few pieces of information that could have also been included cannot show reckless omissions or falsehoods. After all, "we judge a warrant affidavit 'on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added.'" *United States v. Moore*, 999 F.3d 993, 998 (6th Cir. 2021) (quoting *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000)).

Second, the lacking-indicia exception. As the discussion above indicates, the search warrant did not lack any indicia of probable cause. On the contrary, it contained ample evidence. To recap, the warrant included data from MAPS showing a high number of prescriptions for controlled substances, an unusual ratio of prescriptions payments to office visits, suspicious statements by patients at the Clinic observed by officers while undercover, and officers' own ability to obtain prescriptions and refills after brief appointments. *See* R.62, p.9, PageID 558 (summarizing the evidence contained in the search warranted). "Time and again the Supreme Court has emphasized that 'probable cause is not a high bar' to clear." *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) (en banc) (quoting *Wesby*, 583 U.S. at 57). At bottom, the district court was correct to conclude that "the warrants were not 'so lacking in the indicia of probable cause' that no reasonably competent officer" would have relied on them. R.62, p.10, PageID 559 (quoting *Novak*, 33 F.4th at 306). The district court was therefore correct to reject Plaintiffs' Fourth Amendment claim on the pleadings.

## B.

Plaintiffs next bring a malicious-prosecution claim. To plead a successful malicious-prosecution claim, a plaintiff must establish "(1) that a criminal prosecution was initiated against the plaintiff," and that the defendants were involved in the decision to prosecute; "(2) that the state lacked probable cause for the prosecution; (3) that the plaintiff suffered a deprivation of liberty because of the legal proceeding; and (4) that the criminal proceeding was 'resolved in the plaintiff's favor.'"[6] *Jones v. Clark County*, 959 F.3d 748, 756 (6th Cir. 2020) (quoting *Sykes v.*

---

[6] The court's holding in *Jones* on this fourth part was overruled by *Thompson v. Clark*, 596 U.S. 36, 39 (2022), but *Thompson* did not affect the other factors.

*Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010)); *see also Lester v. Roberts*, 986 F.3d 599, 606 (6th Cir. 2021). We can quickly dispose of this claim because Plaintiffs stumble at step one—they admit they were never criminally prosecuted. *See* R.1, p.5, PageID 5; R.54-3, p.34, PageID 474. So there is no basis for a malicious-prosecution claim without, as the name implies, a prosecution.

But Plaintiffs argue that, even if they were never criminally prosecuted, Defendants maliciously pursued civil forfeiture and administrative medical licensing proceedings against them. *See* Appellants Br. at 46–49. But these are not "criminal proceeding[s]." *Sykes*, 625 F.3d at 308–09 (repeating the need for a "criminal proceeding" at each of the four steps of the test); *see also Chiaverini v. City of Napoleon*, 144 S. Ct. 1745, 1749 (2024) ("To prevail on [a malicious-prosecution] claim, he had to show (among other things) that the officers brought criminal charges against him without probable cause."); *Novak*, 33 F.4th at 307 (discussing "criminal[] prosecut[ion]"); *Wright v. City of Euclid*, 962 F.3d 852, 875–76 (6th Cir. 2020). And Plaintiffs cite no case expanding malicious prosecutions to these areas.[7]

## C.

Plaintiffs next bring a substantive-due-process claim as an alternative to their malicious-prosecution claim. They argue that if the court finds that their malicious-prosecution claim fails, then Defendants "will avoid liability for their actions because they do not fit precisely within the contours of a Fourth Amendment malicious-prosecution claim. If that is so, then this Court should proceed to analyze these actions on the DIU's part under the substantive due process 'shocks the

---

[7] The closest Plaintiffs get is quoting a Supreme Court case calling "a forfeiture proceeding" "quasi-criminal in character." Appellants Br. at 46–47, 47 n.155 (quoting *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 700 (1965)). But there appear to be no cases allowing a malicious-prosecution claim to proceed based on civil forfeiture. So this one case is not enough to establish Plaintiffs' point.

conscience' standard. . . ." Appellants Br. at 51. But, like their malicious-prosecution claim, this fails out of the gate.

The Supreme Court has established that "the substantive due process framework is inappropriate where another constitutional amendment encompasses the rights asserted." *Partin v. Davis*, 675 F. App'x 575, 581 (6th Cir. 2017) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). Indeed, the Court has repeatedly explained that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion of Rehnquist, C.J.) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). The explicit textual source here is the Fourth Amendment. So that is the legal provision governing their claim, not the Fourteenth Amendment. Plaintiffs thus fail to plausibly allege a cognizable substantive-due-process claim.

**D.**

The last federal claim Plaintiffs present is that Defendants are liable for conspiracy to violate Plaintiffs' civil rights. "To prevail on a civil conspiracy claim," Plaintiffs "must show that (1) a 'single plan' existed," (2) Defendants "'shared in the general conspiratorial objective' to deprive" Plaintiffs of their constitutional rights, and (3) "an overt act was committed in furtherance of the conspiracy" that injured Plaintiffs. *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)).

But Plaintiffs again present conclusory accusations on this count. In their proposed amended complaint, Plaintiffs say, "Defendants' motivation in doing so was (1) to establish a

positive case history and 'make a name' for the newly minted Detectives in the DIU and (2) justify the continued existence of the DIU, an underperforming and unproductive task force, by securing a prosecution at any cost," and that "[e]ach of the Defendants took overt acts in furtherance of this outcome, as detailed herein." R.54-3, p.44, PageID 484. The original complaint's allegations are even more sparse. *See* R.1, p.13, PageID 13. Still, even if we had more, the claim would fail because Plaintiffs have failed to plausibly allege a constitutional violation. *See Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 462 (6th Cir. 2011) (explaining that in the context of a conspiracy claim, for the plaintiff "to defeat defendants' claim for qualified immunity, he must first establish that a constitutional right was violated"); *see also Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009). So when a plaintiff "has failed to allege facts or to provide evidence sufficient to establish" that a constitutional "violation was committed by the defendants, his conspiracy claim . . . also fails." *Umani*, 432 F. App'x at 462. As discussed, Plaintiffs did not plausibly make such a showing.

**E.**

Plaintiffs last contend that the district court erred in not exercising supplemental jurisdiction over their state-law tortious interference claim. We review a decision not to exercise supplemental jurisdiction for an abuse of discretion. *Morrow v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 22-5232, 2023 WL 5237332, at *6 (6th Cir. Aug. 15, 2023) (citing *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010)). With no viable grounds for reversal of the federal law claims, however, this claim fails. Seeing no path forward for the federal claims, the district court did not abuse its discretion. *See Golf Vill. N., LLC v. City of Powell*, 14 F.4th 611, 624 (6th Cir. 2021) (explaining the "fundamental principle that declining to exercise supplemental

jurisdiction over an action with no remaining federal claims is not an abuse of discretion" (internal quotation marks omitted)).

## IV.

For the above reasons, we affirm.