**Paul M. WEBB, et al., Plaintiffs,**

v.

**GREENE COUNTY SHERIFF'S OFFICE, et al., Defendants.**

No. 3:04cv190.

United States District Court,
S.D. Ohio,
Western Division.

July 6, 2007.

Dwight Dean Brannon, Andrea G. Ostrowski, Douglas Dustin Brannon, Dayton, OH, for Plaintiffs.

Jeffrey Charles Turner, Surdk Dowd & Turner Co LPA, Dayton, OH, for Defendants.

DECISION AND ENTRY OVERRULING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (DOC. # 61); SUSTAINING IN PART AND OVERRULING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. # 63); OVERRULING AS MOOT DEFENDANTS' RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. # 64), PLAINTIFFS' MOTION TO STRIKE SECOND MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. # 70) AND PLAINTIFFS' MOTION FOR LEAVE TO FILE MEMORANDUM IN OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. # 84); APPROVING PARTIES' STIPULATION OF DISMISSAL AS TO DEFENDANT SIEFERT (DOC. # 92); AND OVERRULING AS MOOT PLAINTIFFS' MOTION TO DISMISS DEFENDANT SIEFERT(DOC. # 83)

RICE, District Judge.

Plaintiffs filed a complaint in the Greene County Court of Common Pleas containing ten claims for relief:[1] False Arrest and Imprisonment (Count One), Malicious Prosecution (Count Two), Abuse of Process (Count Three), Intentional Infliction of Emotional Distress (Count Four), Violation of 42 U.S.C. § 1983 (Count Five), Defamation (Count Six), Trespass (Count Seven), Assault and Battery (Count Eight), Loss of Consortium (Count Nine) and a claim for relief seeking attorney's fees, costs to post bond and other costs, which this Court construes as a claim for damages (Count Ten). Doc. # 1. The Defendants filed a Joint Notice of Removal, pursuant to 28 U.S.C. §§ 1331 and 1441, based on this Court's original jurisdiction over Plaintiffs' § 1983 claim and this Court's supplemental jurisdiction over the state law claims. *Id.*

One of the then Defendants, Chief Randy Person, moved for judgment on the pleadings.[2] Doc. # 8. That motion was overruled, but, in so doing, the Court ordered Plaintiffs to amend their complaint (Doc. # 45) which they did on April 1, 2005. Doc. # 47. The Amended Complaint maintained all the claims for relief from the original Complaint, but dismissed a number of the Defendants and made more specific allegations against each of the remaining such. *See,* Doc. # 1 and Doc. # 47. Now pending before the Court are two Motions for Summary Judgment, one filed by the Plaintiffs (Doc. # 61) and one filed by the Defendants (Doc. # 63).[3]

1. The Plaintiffs in this action are Paul Webb and, for purposes of Count Nine, his wife Vivian Webb. The Plaintiffs dismissed a number of Defendants in filing their Amended Complaint and a number of Defendants named in the Amended Complaint have been dismissed since its filing. The remaining Defendants are the Greene County Sheriff's Office; Ralph C. Harper, Greene County Commissioner; Marilyn Reid, Greene County Commissioner; W. Reed Madden, Greene County Commissioner; Det. Kirk Keller, Greene County Sheriff's Office; Detective Robert Walton, Greene County Sheriff's Office; and William Schenck, Greene County Prosecutor. All Defendants are named in their individual and official capacities. Of the remaining Defendants, Keller and Walton are named as Defendants in all of the Plaintiffs claims and Schenck is a Defendant to Counts Two, Four, Five, Six, Nine and Ten. Count Nine is alleged against all of the Defendants.

2. The Plaintiffs have since amended their Complaint and Chief Person is no longer a party to this dispute.

3. The Defendants have also renewed their Motion for Judgment on the Pleadings. Doc. # 64. That motion addresses the same issues raised by the parties in their Motions for Summary Judgment. As a result, the Court will examine those issues in light of the evi-

## I. *FACTUAL BACKGROUND*

On the last day of 2002, Frances Wiggins took her car to "Paul's Garage," located on N. Detroit Street in Xenia, Ohio, for repairs. Doc. # 53, Deposition of Kirk Keller, Ex. 4 at 2. She retrieved it four days later. *Id.* On January 12, 2003, she reported to the Greene County Sheriff's Office that the license plates had been stolen off the car. *Id.* She could not recall if the license plates were on the car when it was picked up from the garage. *Id.* Detective Kirk Keller was assigned to investigate the complaint. Doc. # 53, Keller Dep. at 4, 6. As part of the investigation, he entered the license plate information into L.E.A.D.S. (the Law Enforcement Automated Data System, a statewide law enforcement database). *Id.* at 9–11; Keller Dep., Ex. 7.

On March 12, 2003, Richard Smith was arrested by the Dayton police for driving a car with Wiggins' stolen plates.[4] Doc. # 53, Keller Dep., Ex. 1. Smith told the Dayton police that he had received the stolen plates from a mechanic who lived on Edgewood. Doc. # 53, Keller Dep., Ex. 8. Keller arranged an interview with Smith, while he was in the custody of the Dayton police. Doc. # 53, Keller Dep. at 17–18. During that interview, Smith told Keller a story different from that which he had told

to the Dayton police. Keller, during his deposition, testified to their conversation:

A .... I do know that he changed from the person I think originally that he had told [the Dayton police] that he got the plates from to Paul. Then I verified where that garage is, and that's when he said it was on the east side.

I asked him, "Are you talking about the east side of Xenia, the east side of Dayton? Where are we talking?" He said the east side of Xenia.

Q Did he give you a street on the east side of Xenia that the garage was located on?

A No, ma'am.

Q And did Mr. Smith ever tell you Paul's last name?

A Yes

Q What did Mr. Smith tell you was Paul's last name?

A During the interview I asked him if he had seen this Paul before. He said "yes," he had. I said, "Are we talking about Paul Webb?" And he said "yes."

Doc. # 53, Keller Dep. at 22–23. Keller's interrogation of Smith was originally unrecorded. *Id.* at 23. He recorded a second conversation with Smith in order to get an official statement from him. *Id.* at 23–24; Doc. # 53, Keller Dep., Ex. 2. During the

---

dence presented by both parties in those motions seeking summary judgment. Consequently, the Defendants' Renewed Motion for Judgment on the Pleadings (Doc. # 64), the Plaintiffs' Motion to Strike said motion (Doc. # 70) and the Plaintiffs' Motion for Leave to File Memorandum in Opposition to said motion (Doc. # 84) are hereby OVERRULED, as moot. Also pending before the Court is the Plaintiffs' Motion to Dismiss, without prejudice, all claims against Detective Seifert. Doc. # 83. The Parties have subsequently stipulated to the dismissal of all claims against said Defendant, with prejudice. Doc. # 92. The Stipulation of Dismissal of Defendant Seifert (Doc. # 92) is APPROVED and

the Plaintiffs' Motion to Dismiss all claims as to him (Doc. # 83) is OVERRULED, as moot.

4. At the time of his arrest, the address provided by Smith, 1453 Alameda Dr., Xenia, Ohio, was the same as one of Webb's former addresses. *See,* Doc. # 72, Ex. A; *see also,* Doc. # 58, Deposition of Paul Webb at 6, 38. However, there is nothing in the record to indicate that Smith and Webb knew each other. Further, Webb testified in his deposition that he had never spoken to Smith and first heard of him following his (Webb's) arrest. Doc. # 58, Webb Dep. at 37–38.

recorded conversation, Smith told Keller that he had taken his car to "Paul's Garage" on Detroit Street in Xenia, Ohio, and, while there, someone offered him "dealer tags," as the temporary tags on his car had expired. Doc. # 53, Keller Dep., Ex. 2. When asked who offered him the tags, he responded:

"Uh, Paul did."

Q OK—Paul Webb?

A (not identifiable)

*Id.* at 2. According to Smith, the "dealer tags" offered him at "Paul's Garage" were the license plates on his car at the time of his arrest. *Id.* at 2–3.

The Plaintiff, Paul Webb, operated an auto repair shop called Webb's Auto Service, located on Douglas Street in Xenia, Ohio.[5] Doc. # 58, Webb Dep. at 8–9. On May 5, 2003, Keller, along with Defendant Detective Walton of the Greene County Sheriff's Office, spoke with Webb at his garage. Doc. # 53, Keller Dep. at 25–29. Keller informed him that his name had come up in an investigation regarding stolen license plates, and asked him to come "downtown" to answer some questions. *Id.* at 27–28. Webb refused to accompany Keller or Walton, angrily denied any knowledge of the stolen plates and told them that if they wanted to question him they would need to get a warrant. *Id.; see also,* Doc. # 58, Webb Dep. at 21 and Doc. # 55, Deposition of Robert Walton at 11. Keller told Webb that he had sufficient "information and probable cause to get a warrant." *Id.* at 29. Webb then ordered Keller and Walton off his property. Doc. # 58, Webb Dep. at 21–22. In total, the conversation lasted 5–10 minutes. Doc. # 53, Keller Dep. at 28; Doc. # 55, Walton Dep. at 13.

Following his conversation with Webb, Keller spoke to a member of the Greene County Prosecutor's Office regarding his investigation. Doc. # 53, Keller Dep. at 29. After that conversation, Keller swore out a Complaint and Affidavit seeking an arrest warrant for Paul Webb. *Id.* at 30; *id.,* Ex. 11. The Complaint and Affidavit alleged one count of receiving stolen property and one count of theft.[6] It was "seen and approved" by Suzanne Schmidt, a Prosecutor for Greene County. Doc. # 53, Keller Dep., Ex. 11. Based on the Complaint and Affidavit, an arrest warrant was

---

5. Both the white pages and the yellow pages contain a listing for Paul's Auto Repair located at 1438 N. Detroit St., Xenia. Doc. # 53, Keller Dep., Exs. 18–19.

6. Count 1 states:

BEFORE ME, R L Shackleford, Chief Deputy Clerk of the Xenia Municipal Court personally came Det. Keller, who being duly sworn states that PAUL M. WEBB at Greene County, Ohio, on or between January 1, 2003 and January 4, 2003, did receive, retain or dispose of property of another; to wit: license plates, and the value of the property is $500.00 or more and is less than $5,000.00, knowing or having reasonable cause to believe that the property had been obtained through the commission of a theft offense, contrary to and in violation of Ohio Revised Code Section 2913.51(A), and against the peace and dig-nity of the State of Ohio. (Receiving Stolen Property, a felony of the fifth degree).

Count 2 states:

BEFORE ME, R L Shackleford, Chief Deputy Clerk of the Xenia Municipal Court personally came Det. Keller, who being duly sworn states that PAUL M. WEBB at Greene County, Ohio, on or between January 1, 2003 and January 4, 2003, did with purpose to deprive the owner of property; to wit: license plates, and the value of the property is $500.00 or more and is less than $5,000.00, knowingly obtain or exert control over said property without the consent of the owner or person authorized to give consent, contrary to and in violation of Ohio Revised Code Section 2913.02(A)(1), and against the peace and dignity of the State of Ohio. (Theft, a felony of the fifth degree).

Doc. # 53, Keller Dep., Ex. 11.

issued for Webb. Doc. # 53, Keller Dep. at 30–31; *id.*, Ex. 10.

Paul Webb was arrested on May 22, 2003. Doc. # 53, Keller Dep., Ex. 12. Keller hoped to interview Webb a second time following his arrest, but never got the opportunity to do so. Doc. # 53, Keller Dep. at32–33. Webb was charged with receiving stolen property pursuant to O.R.C. § 2913.51(A) and theft pursuant to O.R.C. § 2913.02(A)(1). Doc. # 47, Amended Complaint, ¶ 15. A Grand Jury later indicted him on the same charges. Doc. # 53, Keller Dep. at 34; Doc. # 72, Ex. B. On June 19, 2003, Webb appeared with his attorney for arraignment before Judge Campbell of the Greene County Common Pleas Court. Doc. # 58, Webb Dep. at 33. He pled not guilty to both charges, *id.,* and was released on bond pending trial. *Id.* As a condition of his bond, he was ordered to check-in weekly with the probation department. *Id.*

Following Webb's arrest, Keller made no attempt to investigate further. Doc. # 53, Keller Dep. at 34. He later reviewed his case file in preparation for Webb's trial. *Id.* at 34–35. His review of the file led him to question whether Webb should have been charged in connection with the stolen plates. *Id.* at 35. He immediately notified the Prosecutor's Office regarding his concerns. *Id.* at 35–36. Following Keller's conversation with that office, the indictment against Webb was dismissed "[u]pon the Motion of the State of Ohio." *Id.,* Ex. 15.

The indictment against Webb was dismissed on July 3, 2003. Doc. # 53, Keller Dep., Ex. 15. Following the dismissal, Webb ceased his weekly check-ins with the probation department. On July 29, 2003, the Greene County Probation Department filed a motion, indicating that he had violated the terms of his bond by not checking in with them. On August 1, 2003, a *capias* was issued for Webb's arrest for violation of bond conditions. Doc. # 72, Ex. C. Pursuant to the *capias*, Webb was arrested, this time by Greene County Deputy Brian Seifert. Doc. # 54, Deposition of Brian Seifert at 8, 11.

The Plaintiffs argue that Webb's arrests and prosecution violated his Fourth Amendment rights and numerous state tort laws. They seek summary judgment on all of their claims, arguing that Webb was first arrested pursuant to an invalid warrant, that Keller lacked probable cause for the arrest, and that, as the first arrest was baseless, the second arrest, which occurred both as a direct result of the first and an error on the part of the Greene County court system, was also groundless. The Defendants seek summary judgment on all of the Plaintiffs' claims, arguing that the arrest warrant was valid, that, even were it not valid, Keller had probable cause to effectuate an arrest and that the second arrest suffered no infirmities.

## II. *SUMMARY JUDGMENT STANDARD*

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir.

1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir.1995); *see also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Protection and Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir.1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2726.

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Sys., Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ..."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## III. *ANALYSIS*

As a preliminary matter, the Defendants argue, and the Plaintiffs do not dispute, that the Greene County Sheriff's Office is not *sui juris* and must be dismissed. This argument is well taken. The Greene County Sheriff's Office is a sub-unit of

Greene County and is, therefore, not subject to suit. *See, Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir.1994); *see also Elam v. Montgomery County,* 573 F.Supp. 797, 804 (S.D.Ohio 1983). Consequently, the Greene County Sheriff's Office is dismissed as a party Defendant to this litigation.

Additionally, the Defendants argue that Walton must be dismissed, as there is nothing in the record to indicate that he was involved in either of Webb's arrests. In so arguing, the Defendants, at least initially, pointed to no portion of the record tending to support that argument. *See,* Doc. # 63 at 10–11; Doc. # 72 at 14; and Doc. # 77 at 10. The Plaintiffs contend that the argument must fail, as the Defendants' failure to support their argument with evidence in the record does not comply with Fed.R.Civ.P. 56. Doc. # 71 at 10–11.

In moving for summary judgment, the moving party bears the burden of showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. However, "[t]his does not mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact. . . . Instead, [ ] the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Id.* The Defendants statements are sufficient to satisfy this burden. *See, Curto v. Harper Woods,* 954 F.2d 1237, 1241–43 (6th Cir.1992). In response to the Defen-

dants' statements, the Plaintiffs have failed to point to that portion of the record which they believe does create a genuine issue of material fact on the issue of Walton's culpability. Consequently, Defendant Walton is entitled to summary judgment on all of the Plaintiffs' claims alleged solely as a result of Webb's arrests (Counts One, Two, Four, Five and Ten). The Defendants' Motion for Summary Judgment (Doc. # 63) is SUSTAINED, as to Defendant Walton, for all claims except those set forth in Counts Three, Six, Seven, Eight and Nine.

Having addressed those claims as alleged against the Greene County Sheriff's Office and a number of claims as alleged against Detective Walton, the Court will now turn its attention to the remainder of the Plaintiffs' allegations. For analytical reasons, the Court will first examine the Plaintiffs' claim made pursuant to § 1983, and will then turn its attention to the Plaintiffs' state law claims.

### A. 42 U.S.C. § 1983[7]

Section 1983 provides a civil cause of action to any citizen of the United States against any person who, under color of state law, deprives the citizen of "any rights, privileges, or immunities secured by the Constitution and laws of the United States." *See Christy v. Randlett,* 932 F.2d 502, 504 (6th Cir.1991) (citations omitted). In order to succeed on a § 1983 claim, a plaintiff must prove two elements: (1) that he was deprived of a right secured by the Federal Constitution or laws of the United States; and (2) that he was subjected to

---

7. The Plaintiffs' § 1983 claim is the only one in their Amended Complaint alleged pursuant to federal law. Doc. # 47. Among their state law claims is one for malicious prosecution. *Id.* That claim may be alleged as both a state and federal claim. However, as a federal claim it is coterminous with the Plaintiffs'

§ 1983 claim. *See, County of Sacramento v. Lewis,* 523 U.S. 833, 843–44, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Therefore, to the extent that the Plaintiffs, in their Amended Complaint, attempt to raise a federal claim of malicious prosecution, it will be analyzed in the context of their § 1983 claim.

this deprivation by a person acting under the color of state law. *See, Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir.1994). "By its terms, § 1983 creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Gardenhire v. Schubert,* 205 F.3d 303, 310 (6th Cir.2000) (*citing Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)).

The Plaintiffs contend that Defendants Keller and Schenck (the only two remaining Defendants to this claim) [8] violated Webb's rights by "arresting, interrogating, charging, detaining and prosecuting" him for exercising his rights "not to talk, to be interrogated and/or be taken into custody and/or placed under arrest." Doc. # 47 at ¶¶ 56–58. The Defendants contend that there was no constitutional violation, that they are entitled to absolute quasi-judicial immunity or prosecutorial immunity, that they are entitled to qualified immunity for claims made against them in their individual capacities, and that the Plaintiffs' claims made against them in their official capacities must fail. For analytical purposes, the Court will first address the question of whether either of the Defendants are entitled to any of the immunities

they assert. The Court will then turn its attention to the Plaintiffs' claims made against the Defendants in their official capacities. Finally, the Court will examine whether either party is entitled to summary judgment on the question of whether Webb's Fourth Amendment rights were violated.

### 1. Absolute Quasi–Judicial Immunity [9]

It is well established that judges are entitled to absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless these actions are taken in the complete absence of any jurisdiction. Moreover, absolute judicial immunity has been extended to non-judicial officers who perform "quasi-judicial" duties. Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune.

*Bush v. Rauch,* 38 F.3d 842, 847 (6th Cir.1994) (internal citations omitted).

 The Supreme Court has endorsed a "functional" approach in deter-

8. The Plaintiffs' allegations were also made against Walton, Siefert and Sesslar. Doc. # 47 at ¶ 56. All of the Plaintiffs claims against Defendants Seifert and Sesslar have since been dismissed and the Court has sustained the Defendants' Motion for Summary Judgment as to Walton on this claim. Consequently, the Court's analysis will focus on the parties' arguments as they relate to Keller and Schenck, the remaining Defendants.

9. The Defendants nowhere identify on whose behalf this argument is made. However, since the argument is made regarding the exercise of the arrest warrant, the Court will presume that it is made on behalf of Keller, the only remaining Defendant the Plaintiffs allege are responsible for executing the initial arrest warrant. The Defendants' arguments regarding quasi-judicial immunity are also

made in reference to the *capias* which precipitated Webb's second arrest. However, there is no evidence on the record to suggest that any of the remaining Defendants participated in that second arrest. Plaintiffs argue that the Defendants should be liable for the second arrest as a result of their actions taken in effectuating the first. If the Defendants are, as they argue, immune to litigation for their actions in effectuating Webb's first arrest, they are by extension immune to the consequences of those actions. Further, Webb's second arrest was precipitated by the actions of the Greene County Probation Department, a superseding, intervening act, as a matter of law, that breaks the string of causation. Consequently, Webb's claims will be analyzed exclusively in the context of his first arrest.

mining whether an official is entitled to absolute immunity. *Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988); *Burns v. Reed,* 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). Under this approach, a court "looks to 'the nature of the function performed, not the identity of the actor who performed it.' " *Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 2609, 125 L.Ed.2d 209 (1993) (*quoting Forrester,* 484 U.S. at 229, 108 S.Ct. 538). Enforcing or executing a court order is intrinsically associated with a judicial proceeding. *Bush,* 38 F.3d at 847. Law enforcement officials executing a *facially valid* court order are protected by absolute quasi-judicial immunity. *See, Pisani v. Village of Bentlyville, Ohio,* 1996 U.S.App. LEXIS 32923 (6th Cir.Ohio Dec. 12, 1996); *see also, Roland v. Phillips,* 19 F.3d 552, 556–57 (11th Cir. 1994) (sheriff and deputy sheriffs entitled to immunity for arrest pursuant to facially valid court order); *Valdez v. Denver,* 878 F.2d 1285 (10th Cir.1989) (sheriff and sheriff's deputies took plaintiff into custody pursuant to judicial order); *Coverdell v. Department of Social & Health Servs.,* 834 F.2d 758 (9th Cir.1987) (child protective services worker's removal of newborn infant from hospital and placement in temporary shelter pursuant to court order); *Henry v. Farmer City State Bank,* 808 F.2d 1228 (7th Cir.1986) (sheriff participated in execution of foreclosure sale pursuant to judgment of foreclosure); *Tymiak v. Omodt,* 676 F.2d 306 (8th Cir.1982) (*per curiam* ) (sheriff evicted plaintiff from home in compliance with court order); *Fowler v. Alexander,* 478 F.2d 694 (4th Cir.1973) (sheriff and jailer confined plaintiff pursuant to a court order).

■ Webb was arrested, initially, pursuant to an arrest warrant obtained by Keller, based on a Complaint and Affidavit [10] sworn to by him. The question before the Court then, in determining whether the Defendants are entitled to quasi-judicial immunity, is whether Webb's arrest was made pursuant to a facially valid arrest warrant. The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." U.S. Const. Amend. IV. Although the Complaint and Affidavit alleges that Webb committed one count of receiving stolen property and one count of theft, both allegations are made by reciting only the applicable statutory language, with the appropriate name, date and location inserted therein. This type of complaint is insufficient to support a facially valid arrest warrant. *See, Whiteley v. Warden, Wyoming State Penitentiary,* 401 U.S. 560, 564–65, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) (holding that a complaint which states nothing more than that the plaintiff had committed a crime is insufficient to establish probable cause to support the issuance of an arrest warrant); *see also, Sampson v. City of Xenia,* 108 F.Supp.2d 821, 837 (S.D.Ohio 1999) (finding that Complaint and Affidavit containing allegations of illegal activity, but lacking facts indicating the basis for the allegation was insufficient to support a finding of probable cause). As the warrant that Keller relied upon in arresting Webb was facially invalid, he is not entitled to absolute quasi-judicial immunity for arresting him pursuant to it.[11]

10. The "Complaint and Affidavit" is a single document. *See,* Doc. # 53, Keller Dep., Ex. 11.

11. Even were the warrant facially valid, Keller, as the swearing officer on the Complaint and Affidavit, would not be entitled to absolute immunity. The only level of protection from suit that is potentially available when an official vouches for the truth of the contents of a criminal complaint is qualified immunity. *Ireland v. Tunis,* 113 F.3d 1435, 1446 (6th

### 2. *Absolute Prosecutorial Immunity*

The Defendants also argue that Greene County Prosecutor William Schenck is entitled to absolute prosecutorial immunity for all of the Plaintiffs' claims alleged against him. The Plaintiffs, to the contrary, argue that Schenck is not entitled to prosecutorial immunity because "[w]hen a prosecutor aids in the preparation of an arrest warrant, the prosecutor is engaged in non-advocate functions." Doc. # 61 at 30, *citing McSurely v. McClellan,* 697 F.2d 309, 320 (D.C.Cir.1982).

■■■ Absolute prosecutorial immunity is justified "only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct." *Burns,* 500 U.S. at 494, 111 S.Ct. 1934. "Prosecutors are entitled to absolute immunity for conduct 'intimately associated with the judicial phase of the criminal process.'" *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). "The actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor. Qualified immunity represents the norm.... The question, then, is whether the prosecutors have carried their burden of establishing that they were functioning as 'advocates'" when they performed the actions complained of. *Buckley,* 509 U.S. at 273–74, 113 S.Ct. 2606 (emphasis added).

The Supreme Court has extended absolute immunity to prosecutors only where their challenged acts were performed while serving as an advocate in legal proceedings. *Kalina v. Fletcher,* 522 U.S.

118, 125, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). "Sixth Circuit precedent has established that 'the critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process.'" *Pusey v. City of Youngstown,* 11 F.3d 652, 658 (6th Cir.1993) (*quoting Joseph v. Patterson,* 795 F.2d 549, 554 (6th Cir.1986), *cert. denied,* 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 516 (1987)).

■■■ The Plaintiffs argue that the Complaint and Affidavit form prepared by Schenck, for use in obtaining arrest warrants, and the process established by him for the issuance of such, were constitutionally infirm.[12] Doc. # 61 at 28–30. Prosecutorial immunity extends to " 'a prosecutor's decision to file a criminal complaint and seek an arrest warrant and the presentation of these materials to a judicial officer.'" *Manetta v. Macomb County Enforcement Team,* 141 F.3d 270, 274 (6th Cir.1998) (*quoting Ireland v. Tunis,* 113 F.3d 1435, 1446 (6th Cir.), *cert. denied,* 522 U.S. 996, 118 S.Ct. 560, 139 L.Ed.2d 401 (1997)). Prosecutors are not absolutely immune, however, when they perform administrative, investigative or other functions (i.e. giving legal advice to police, holding press conferences or fabricating evidence). *Manetta,* 141 F.3d at 274 (denying absolute immunity to a prosecutor for investigating a couple and holding them on extortion charges without probable cause). Here, the Plaintiffs are not challenging the decision to obtain an arrest warrant; rather, they are challenging the manner in which it was obtained. However, while the

---

Cir.), *cert. denied,* 522 U.S. 996, 118 S.Ct. 560, 139 L.Ed.2d 401 (1997)

**12.** The Defendants argue that the Plaintiffs' argument must fail as the Complaint and Affidavit they used complied with O.R.C. § 29375.17. *See,* Doc. # 72 at 12–13. The

Defendants' argument, while accurate, is unavailing. The Plaintiffs' claim here is made pursuant to federal law, not state law. Therefore, the question before the Court is whether the Complaint and Affidavit violates the *federal* constitution. *See, Sampson, supra.*

actions that the Plaintiffs are challenging are administrative in nature, their administrative nature does not move the actions outside the bounds of prosecutorial immunity. Absolute immunity attaches to administrative acts necessary for a prosecutor to initiate a criminal proceeding. *See, Ireland v. Tunis*, 113 F.3d 1435, 1446 (6th Cir.1997) (holding that a prosecutor falls outside the shade of prosecutorial immunity where he switches from presenting the charging document to vouching personally for the truth of the contents of the document). Here, there is no evidence that Schenck at any time vouched for the truth of the contents of a document, the only documents at issue being the Complaint and Affidavit and the arrest warrant. While the Plaintiffs' allegations against him concern arguably administrative acts, those acts were taken in the context of his role as an advocate in obtaining an arrest warrant (Plaintiffs allege that Schenck prepared the blank form and used the completed form (seen and approved by an assistant) to obtain a warrant). Consequently, he is entitled to absolute prosecutorial immunity for them. Plaintiffs' Motion For Summary Judgment is, therefore, OVERRULED as to Defendant Schenck, and the Defendants' Motion for Summary Judgment is SUSTAINED as to him. Defendant Schenck is dismissed as a party Defendant to Plaintiffs' Fifth Claim for Relief, leaving only Defendant Keller as a party to said claim.

### 3. *Qualified Immunity*

Though Detective Keller is not entitled to absolute quasi-judicial immunity, he might still be entitled to qualified immunity for Plaintiffs' § 1983 claim against him. In the interest of protecting public officers in the course of performing their discretionary duties from unduly onerous lawsuits under § 1983, the Supreme Court has recognized the doctrine of "qualified immunity" for such officers, "shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Thus, in order for a public officer to be held accountable, the right she is charged with violating must be clearly established, and be one of which a reasonable officer in her position would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

In determining whether Keller is entitled to qualified immunity, the Court must first decide whether, "... [t]aken in the light most favorable to the [Plaintiffs], do the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If the Court's answer is affirmative, it must then decide whether the right is clearly established by determining "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151. The Plaintiffs' § 1983 claim alleges that Paul Webb's arrest violated rights guaranteed him by the Fourth Amendment to the U.S. Constitution, thus raising the question of whether Keller had probable cause to arrest him.[13]

---

**13.** Plaintiffs also argue that Keller's failure to investigate possible exculpatory evidence prior to arresting him was violative of Webb's rights. Doc. # 71 at 5–6. "Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir.1999). Therefore, the question properly before the Court is not whether Keller failed in his duty to investigate, but rather, whether probable cause existed at the time Webb was arrested. *See, Radvansky v. City of*

As has already been discussed, the arrest warrant issued for Webb's arrest was facially invalid. The Complaint and Affidavit used to obtain the warrant contained only the applicable statutory language alleging that Webb was guilty of the crimes for which he was later charged, and the date and county where the alleged crimes took place. Complaints that allege the requisite statutory elements and include a "bare bones" recitation of facts are sufficient to establish probable cause, only if they indicate a source or basis for the complainant's beliefs. *See, Whiteley,* 401 U.S. at 564–65, 91 S.Ct. 1031; *see also, Sampson, supra.* The complaint need not be based upon personal knowledge in order to establish probable cause, but the complainant's basis of knowledge must be apparent on the face of the complaint. *Id.* Absent some identifiable basis for Keller's belief that Webb had engaged in theft and receiving stolen property, the Complaint and Affidavit is insufficient to establish probable cause. *Id.; see also, United States v. Fachini,* 466 F.2d 53, 56 (6th Cir.1972) (noting that a complaint must provide an affiant's answer to the hypothetical question, "What makes you think that the defendant committed the offense charged?"). As the Complaint and Affidavit herein contains no such identifiable basis, it is insufficient to support a finding of probable cause for Webb's arrest. *See, Whiteley, supra; see also, Sampson, supra.*

The foregoing conclusion does not *ipso facto* establish a Fourth Amendment violation. Under § 1983, a claim for an unconstitutional seizure in violation of the Fourth Amendment "exists when the seizure takes place in the absence of probable cause." *Richardson v. City of Dayton,* 948 F.2d 1290, 1991 WL 243562 (6th Cir. Nov.21, 1991). "Arrest without a warrant does not violate the Fourth Amendment if probable cause exists. . . ." *Criss v. City of Kent,* 867 F.2d 259, 262 (6th Cir.1988). Where an arrest is made absent a valid warrant, or pursuant to an invalid warrant, "the question becomes . . ., whether the arresting officers were justified in their belief that plaintiff had probably committed or was committing a crime." *Id.; see also, Sampson,* 108 F.Supp.2d at 837–39 (finding that an arrest made pursuant to an invalid warrant was valid as it was supported by probable cause), *Whiteley, supra* (holding same). Probable cause only requires some probability of criminal activity, not some type of *prima facie* showing. *Id.*

Generally, probable cause exists when the police have "reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). "Probable cause determinations involve an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *See, Gardenhire,* 205 F.3d at 315 (internal citation omitted). Here, addressing the question in the context of Keller's claim to qualified immunity, the Court must determine whether, examining the facts in the light most favorable to the Plaintiffs, a reasonable officer could have believed that Webb had probably committed or was committing a crime at the time he was arrested. The Plaintiffs argue that the proverbial reasonable officer could not have believed so; Keller argues that he could. There is evidence supporting each party's position.

The Defendants offer the following facts. Smith answered in the affirmative when questioned about whether he had received

the plates from Webb. In the same unrecorded conversation with Keller, he also asserted that the garage he received the plates from was located on the east side of Xenia. Webb was later arrested at the auto service he owned on the east side of that city. In support of their argument that Webb's arrest lacked probable cause, the Plaintiffs offer these facts. Wiggins, when she filed her complaint regarding the plates, indicated that she had recently had her car serviced at "Paul's Garage," on N. Detroit Street in Xenia. Later, Smith, who was arrested for driving a car bearing the stolen plates, indicated in the interrogation recorded by Keller that he had received the license plates at "Paul's Garage," on N. Detroit Street in Xenia. The auto repair shop owned by Webb is located on Douglas Street in Xenia, and is called "Webb's Auto Service."

 In this case, the facts are such that a reasonable jury, examining the evidence in the light most favorable to the Plaintiffs, could find that Keller lacked probable cause to arrest Webb. The only evidence implicating Webb, available to Keller at the time of his arrest, was Smith's affirmative answer when Keller asked him, during the unrecorded portion of the interrogation, whether they were talking about Paul Webb. The Defendants have repeatedly argued that Smith's identification of Webb as the man who gave him the stolen plates is sufficient to establish probable cause for Webb's arrest. Were this fact viewed in isolation, their argument might be well taken. However, "[t]he law has been clearly established since at least the Supreme Court's decision in *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925), that probable cause determinations involve an examination of all facts and circumstances *within an officer's knowledge at the time of an arrest.*" *Estate of Dietrich v. Bur-*

*rows*, 167 F.3d 1007, 1012 (6th Cir.1999) (emphasis in original).

At the time Webb was arrested, Keller was aware that Smith initially told the Dayton police that he had received the stolen plates from a mechanic who lived on Edgewood. Smith responded in the affirmative when asked if the Paul they were discussing was Paul Webb, and later told Keller that he had received the plates at "Paul's Garage," on N. Detroit St. in Xenia, Ohio. Keller was aware, at the time that he arrested Webb, that Wiggins had taken her car to "Paul's Garage," on N. Detroit St. in Xenia, Ohio, and he interviewed Webb at his business, called "Webb's Auto Service," on Douglas Street in that city. There is nothing in the record to suggest that either the Prosecutor who saw and approved the Complaint and Affidavit, or the clerk who signed the arrest warrant, was aware of this evidence. Had Keller considered all of the evidence in his possession at the time he obtained the warrant for Webb's arrest, it may have vitiated probable cause.

 A police officer has probable cause only when he discovers reasonably reliable information that the suspect has committed a crime. *See, Beck,* 379 U.S. at 91, 85 S.Ct. 223. In obtaining such reliable information, an officer cannot look only at the evidence of guilt, while ignoring all exculpatory evidence. To have probable cause to arrest, a police officer must take into account all the evidence——both inculpatory and exculpatory——that he has at the time of the arrest. *Gardenhire, supra.* In arguing that Keller had sufficient evidence to establish probable cause when he arrested Webb, the Defendants rely entirely on inculpatory evidence of questionable reliability, while ignoring exculpatory evidence within Keller's posses-

sion.[14] Examining both the inculpatory and exculpatory evidence in his possession at the time he arrested Webb, in the light most favorable to the Plaintiffs, as this Court must do when ruling upon the Defendants' motion for summary judgment, a reasonable jury could find that Keller lacked probable cause to arrest Webb. *See, Radvansky v. City of Olmsted Falls*, 395 F.3d 291 (6th Cir.2005) (finding that arrest lacked probable clause where arresting officers considered only inculpatory evidence in their possession and ignored exculpatory evidence). Lacking probable cause to arrest Webb, and lacking a facially valid arrest warrant, a reasonable jury could conclude that Keller violated the rights guaranteed Webb by the Fourth Amendment.

Though the evidence is such that a reasonable jury could conclude that Keller violated Webb's constitutional rights, he may still be entitled to qualified immunity. Even where an officer has violated a plaintiff's constitutional rights, that officer is entitled to qualified immunity if the right that he violated was not "clearly established" at the time of the violation. *Saucier, supra.* Furthermore, the "clearly established law" that forms the focal point of the Court's inquiry must be defined with particularity, and not in the abstract. *See Anderson, supra,* at 639–40, 107 S.Ct. 3034. For instance, it is not enough to say that, because the *general* right to due process as guaranteed by the Due Process Clause is clearly established, any *specific action* later found to be violative of the Due Process Clause is *per se* violative of a "clearly established" right. *See id.* at 639, 107 S.Ct. 3034. Rather, a court must more closely scrutinize "the contours" of the right allegedly violated; it must attempt to

analyze the right allegedly violated in a particularized, less generalized, context. Thus, the relevant question is whether an officer could have reasonably believed that her actions were lawful, in light of the facts and the law as generally understood at the time of her actions. *See id.* at 641, 107 S.Ct. 3034.

At the time of Webb's arrest by Keller, it was well established that any arrest without probable cause violated the Fourth Amendment. *Crockett v. Cumberland College*, 316 F.3d 571, 580 (6th Cir.2003) (*citing Klein v. Long*, 275 F.3d 544, 550 (6th Cir.2001); *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir.2000)); *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir.1999); *Baker v. McCollan*, 443 U.S. 137, 142–43, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) ("By virtue of its 'incorporation' into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty.") (*citing Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)). Webb alleges that he was arrested, without probable cause, due to the failure of Keller to consider all of the facts in his possession at the time of Webb's arrest. "The law has been clearly established since at least the Supreme Court's decision in *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925), that probable cause determinations involve an examination of all facts and circumstances *within an officer's knowledge at the time of an arrest.*" *Estate of Dietrich, supra* (emphasis in original); *see also, Radvansky, supra.* As the right that Keller is accused of violating was clearly established at the time of the

---

14. The inculpatory evidence is of questionable reliability as it is based entirely on the unrecorded statement of a suspect who had already changed his story once and who later gave a third, different account during his recorded statement.

arrest, he is not entitled to qualified immunity.

### 4. *Official Capacity Claims*

 The Plaintiffs filed suit against the Defendants in their individual and official capacities. "A suit against an individual in his official capacity is the equivalent of a suit against the government entity [that employed him]." *Myers v. Potter,* 422 F.3d 347, 358 (6th Cir.2005) (quoting *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir.1994)). To prevail on their claim against the Defendants in their official capacity, under § 1983, the Plaintiffs must establish 1) that they were deprived of a constitutional right, 2) that the county had a "policy," and 3) that the policy was the moving force behind the constitutional violation. *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Towards that end, the Plaintiffs argue that Webb was arrested without probable cause, a violation of his Fourth Amendment Rights, pursuant to a facially invalid arrest warrant; that there was a policy or practice of seeking such invalid warrants; and that this policy was the moving force behind the constitutional violation. In support of this argument, the Plaintiffs offer as evidence a number of Complaint and Affidavits and their attendant arrest warrants. Doc. # 61, Ex. 1. Just as in the Complaint and Affidavit used to obtain the arrest warrant for Webb, all of the Complaint and Affidavits attached by the Plaintiffs lack sufficient facts to establish probable cause for an arrest warrant. The Plaintiffs argue that this evidence is sufficient to establish a policy or practice, on

the part of Greene County, of arrests without probable cause. The Plaintiffs' argument must fail.

The constitutional violation at question is grounded in the allegation that Webb was arrested without probable cause, a violation of the Fourth Amendment. As the Court discussed earlier, an arrest made pursuant to a facially invalid arrest warrant does not necessarily violate the Fourth Amendment, as long as probable cause to arrest exists. *See, Whiteley, supra; see also, Sampson, supra.* In order to demonstrate a Fourth Amendment violation, a plaintiff is required to show that the arrest was made without probable cause. While the Plaintiffs have offered evidence suggesting that the Greene County Sheriff's Department, and by extension Greene County, had a policy or practice of swearing to Complaint and Affidavits insufficient to support a valid arrest warrant, they have offered nothing to suggest that there existed a policy or practice of arresting people without probable cause.[15] Consequently, they cannot demonstrate that the policy in question was the moving force behind the constitutional violation at issue. Accordingly, the Plaintiffs' Motion for Summary Judgment is OVERRULED, and the Defendants' Motion for Summary Judgment is SUSTAINED, as to the Plaintiffs' § 1983 claims made against Keller in his official capacity.

### 5. *Constitutional Violation*

Both parties move for summary judgment on the Plaintiffs' § 1983 claim. This claim is grounded in the Plaintiffs' allegation that Webb was arrested without probable cause.[16] As has already been dis-

---

**15.** Importantly, there is nothing in the record to suggest that all of the people for whom the Plaintiffs have provided arrest warrants were arrested without probable cause, or were even arrested.

**16.** Specifically, the Plaintiffs contend that Keller violated Webb's rights by "arresting, interrogating, charging, detaining and prosecuting" him for exercising his rights "not to talk, to be interrogated and/or be taken into

cussed, when viewing all of the evidence in the light most favorable to the Plaintiffs, a reasonable jury could find that he was so arrested without probable cause and Keller is not entitled to qualified immunity. Consequently, the Defendants' Motion for Summary Judgment is OVERRULED as to Defendant Keller. However, in order to rule on the Plaintiffs' Motion for Summary Judgment, the Court must examine the evidence in the light most favorable to Defendant Keller, the sole remaining Defendant to this claim, as the party against whom the motion is directed.

■ Generally, probable cause exists when the police have "reasonably trustworthy information ... sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck, supra.* "Probable cause determinations involve an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *See Dietrich,* 167 F.3d at 1012. "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor,* 60 F.3d 1211, 1215 (6th Cir.1995). While there was significant exculpatory evidence available to the Keller at the time that Webb was arrested, he had been identified as the person responsible for transferring the plates to Smith. The evidence is such that, examining the facts in the light most favorable to the Defendant Keller, a reasonable jury could find that a prudent man would believe that Webb had committed a crime. Consequently, the Plaintiffs' Motion for Summary Judgment is OVERRULED as to Count Five.

### B. State Law Claims

In addition to their § 1983 claim, the Plaintiffs have alleged that the conduct of Defendants Keller, Walton, Schenck and the Greene County Commissioners constituted a violation of Ohio state law. The Plaintiffs and all Defendants have moved for summary judgment on all of the Plaintiffs' state law claims. The Defendants argue that they are statutorily immune to those state law claims. For analytical purposes the Court will first examine the question of the Defendants' immunity, and will then, if necessary, turn to the merits of the parties' motions for summary judgment on each of the individual claims.

#### 1. Immunity

■ Plaintiffs assert state law claims for false arrest and imprisonment, malicious prosecution, abuse of process, intentional infliction of emotional distress, defamation, trespass, assault and battery and loss of consortium. Defendants argue that political subdivisions and their employees are immune to state tort claims under O.R.C. § 2744.02(A).[17] The Plaintiffs have argued, relying on *Kammeyer v. City of*

---

custody and/or placed under arrest." Doc. # 47 at ¶¶ 56–58. As has been discussed, a reasonable jury could conclude that Webb was arrested without probable cause. Webb has presented evidence indicating that Keller was upset by Webb's refusal to talk to him, that shortly after their initial conversation Keller obtained a warrant for Webb's arrest, and that Keller hoped to speak to him again following his arrest. Therefore, the evidence is such that a reasonable jury could conclude that Webb's arrest was motivated by Keller's desire to question him.

17. The Defendants also argue that Schenck has absolute prosecutorial immunity for all of the Plaintiffs' state law claims. Doc. # 63 at 10. The Defendants' argument is well taken. *See, Hunter v. Middletown,* 31 Ohio App.3d 109, 110, 509 N.E.2d 93 (Butler Cty. Ct.App. 1986). Even were Schenck not immune based upon O.R.C. § 2744, he would still be immune based on his absolute prosecutorial immunity.

*Sharonville,* 311 F.Supp.2d 653 (S.D.Ohio 2003) (Spiegel, J), that O.R.C. § 2744 violates the Ohio Constitution. *See,* Doc. # 61 at 13–14.[18] Recently, other judges in this District have declined to follow *Kammeyer. See, Samples v. Logan County,* 2006 WL 39265, 2006 U.S. Dist. LEXIS 320 (S.D.Ohio Jan. 6, 2006) (Smith, J); *see also, Grant v. Montgomery County Job & Family Servs.,* 2005 WL 2211266, 2005 U.S. Dist. LEXIS 32862 (S.D.Ohio Sept. 8, 2005) (Beckwith, CJ).

The Ohio Supreme Court has held that O.R.C. § 2744 does not violate either the Ohio or the United States Constitutions. *Fahnbulleh v. Strahan,* 73 Ohio St.3d 666, 653 N.E.2d 1186 (1995) (holding that O.R.C. § 2744 does not violate the equal protection clauses of either the Ohio or federal Constitutions); *see also, Menefee v. Queen City Metro,* 49 Ohio St.3d 27, 550 N.E.2d 181 (1990) (same); *Fabrey v. McDonald Village Police Dep't,* 70 Ohio St.3d 351, 639 N.E.2d 31 (1994) (holding that O.R.C. § 2744 did not violate the due process and equal protection provisions of the Ohio and United States Constitutions, or the right to remedy provision of the Ohio Constitution). In light of a split of authority within this District, and without a binding Circuit or Supreme Court decision, the Court will follow the precedent set by the Ohio Supreme Court holding that O.R.C. § 2744 is not violative of the Ohio constitution.

Ohio Revised Code § 2744.02(A)(1) provides:

Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

Section 2744.02(B) of the Ohio Revised Code expressly provides the following five situations where a political subdivision can be liable:

(1) damage caused by the negligent operation of a motor vehicle;

(2) damage caused by negligent acts of a political subdivision's employees with respect to its proprietary functions;

(3) damage caused by failure to keep roads in repair or from failure to remove obstructions from public roads;

(4) damage or injury caused on the grounds of buildings used in connection with the performance of a governmental function, but not including jails; and,

(5) where civil liability is expressly imposed upon a political subdivision by the [Ohio] Revised Code.

The second exception listed above (the only exception remotely applicable) deals with negligence in the performance of proprietary functions. By definition, a proprietary function "involves activities that are customarily engaged in by nongovernmental persons." O.R.C. § 2244.01(G)(1)(b). Also, the statute ex-

---

18. The decision in *Kammeyer* was based on a plurality opinion, expressed in *Butler v. Jordan,* 92 Ohio St.3d 354, 750 N.E.2d 554 (2001), that called into question the validity of O.R.C. § 2744 under the Ohio state constitution. *Kammeyer v. City of Sharonville,* 311 F.Supp.2d 653 (S.D.Ohio 2003). In *Butler,* three Justices, in *dicta,* expressed the opinion that § 2744 might violate the Ohio state constitution. 92 Ohio St.3d at 358–374, 750 N.E.2d 554. However, the majority of the Court did not join in that opinion, and two Justices joined in a concurrence directly opposing the opinion expressed by the plurality. *Id.* at 375, 750 N.E.2d 554.

pressly states that proprietary functions are not those activities specified in O.R.C. § 2244.01(C)(2), which lists governmental functions. O.R.C. § 2744.01(C)(2)(a) specifically defines police services as a governmental function. Clearly, none of the Defendants in the present case were involved in proprietary functions as defined by statute. The Court finds none of the five exceptions to political subdivision immunity apply to the present case. Accordingly, the state law claims against the Defendants, in their official capacities (including the Greene County Commissioners), are barred by statute and they are, therefore, entitled to summary judgment. *See, Myers v. Potter*, 422 F.3d 347, 358 (6th Cir.2005) ("A suit against an individual in his official capacity is the equivalent of a suit against the government entity [that employs him].***"); *see also, Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

As to the issue of individual liability, in Ohio, a public employee is immune from liability in performing a governmental function, unless the officer's "acts or omissions were with malicious purpose, in bad faith or in a wanton or reckless manner." O.R.C. § 2744.03(A)(6)(b). There is no dispute that, in effectuating Webb's arrest, in charging him, and in prosecuting him, the Defendants were engaged in governmental functions. *See,* O.R.C. § 2744.01(C)(2)(a). Thus, the Court must address whether their actions were with malicious purpose, in bad faith or conducted in a wanton or reckless manner.

A plaintiff faced with a motion for summary judgment based on 2744 immunity must demonstrate that she possesses sufficient evidence to create a jury question on whether the presumption of immunity has been rebutted. *Cook v. City of Cincinnati*, 103 Ohio App.3d 80, 658 N.E.2d 814, (Hamilton Cty. Ct.App.1995). The Plaintiffs have offered nothing to create a genuine issue of material fact on the question of the Defendants' 2744 immunity, instead relying on their argument that O.R.C. § 2744 is unconstitutional. *See,* Doc. # 61 at 13–14; Doc. # 71 at 12–13; and, Doc. # 78 at 12–13. As the Court stated earlier, there being a split of authority within this District, and no Circuit or Supreme Court decision on the issue, the Court will follow the Ohio state court rulings interpreting the state constitution and applying the statute. Consequently, the Plaintiffs have failed to satisfy their burden and the Defendants, including the Greene County Commissioners, are entitled to summary judgment on all of the Plaintiffs' state law claims (Counts One–Four and Six–Nine).[19] The Defendants' Motion for Summary Judgment is, therefore, SUSTAINED as to all of the Plaintiffs' state law claims, and the Plaintiffs' Motion for Summary Judgment on these claims is OVERRULED. As all of the Defendants are entitled to immunity on all of the Plaintiffs' state law claims, examination of the merits of the

---

**19.** There is no independent federal claim for loss of consortium. *See, Stallworth v. Cleveland*, 893 F.2d 830, 839 (6th Cir.1990) (holding that district court erred in exercising pendant jurisdiction over loss of consortium claim where the only federal claim provided for relief only to the plaintiff and not the plaintiff's spouse). A claim for loss of consortium is a derivative action that does not exist absent a primary claim. *Wang v. Goodyear Tire & Rubber Co.*, 68 Ohio App.3d 13, 19, 587

N.E.2d 387 (1990). Under Ohio law, in order to establish a claim for loss of consortium, Plaintiffs must establish that Defendants committed a legally cognizable tort upon a spouse who suffered bodily injury. *Francis v. Gaylord Container Corp.*, 837 F.Supp. 858, 864 (S.D.Ohio 1992, Beckwith, J). Webb nowhere claims he sustained bodily injury. Consequently, even where his other claims viable, the Defendants would still be entitled to summary judgment on Count Nine. *Id.*

parties' arguments for summary judgment as to each individual claim would be superfluous.[20]

## IV. CONCLUSION

The Plaintiffs' Motion for Summary Judgment (Doc. # 61) is OVERRULED. The Defendants' Motion for Summary Judgment (Doc. # 63) is OVERRULED, as to the Plaintiffs' § 1983 claim (Count Five), as alleged against Defendant Keller in his individual capacity, and Count Ten, and SUSTAINED as to all other claims. The Defendants' Renewed Motion for Judgment on the Pleadings (Doc. # 64), the Plaintiffs' Motion to Strike Greene County Defendants' Renewed Motion for Judgment on the Pleadings (Doc. # 70) and the Plaintiffs' Motion for Leave to File Memorandum in Opposition to said motion (Doc. # 84) are hereby OVERRULED, as moot. The Stipulation of Dismissal of Defendant Seifert (Doc. # 92) is APPROVED, and the Plaintiffs' Motion to Dismiss all claims as to Detective Seifert (Doc. # 83) is OVERRULED, as moot. Of the ten claims in the Plaintiffs' Amended Complaint, only Count Five (Webb's § 1983 claim as alleged against Defendant Keller in his individual capacity) and Count Ten (a claim for the costs of posting bond and of retaining an attorney to defend him on the state criminal charges) remain. All of the remaining Defendants, with the exception of Defendant Keller, are hereby DISMISSED from this action.

---

20. Neither party argues for summary judgment on the merits of Count Ten (Doc. # 47, ¶¶ 84–88), Plaintiffs' claim for relief seeking the costs of posting bond and retaining an attorney to defend him on the state court charges incurred as a result of the criminal charges filed against him. The Court interprets this claim as one for damages, and it survives as an adjunct to Count Five, the sole remaining claim.